STATE v. THOMAS HOWARD BOTT.

246 N. W. 2d 48.

September 24, 1976—No. 45967.

· *Goldberg, Torgerson, Brewer & Kellum* and *Steven H. Goldberg,* for appellant.

*Warren Spannaus,* Attorney General, *Richard B. Allyn,* Assistant Attorney General, *Craig Forsman,* Special Assistant Attorney General, and *Julius E. Gernes,* County Attorney, for respondent.

PETERSON, JUSTICE.

Defendant, Thomas Howard Bott, appeals from a conviction of attempted second-degree murder and two counts of aggravated assault arising from the shooting of a fellow resident in a hotel.

Defendant and Donald A. Gaulke resided in a low-rent, residential hotel in Winona. Gaulke had a chronic cough and had previously accused defendant, who lived on the same floor, of mocking his cough, which at one time had led to the exchange of heated words. On April 26, 1974, Gaulke, who at the time was carrying his groceries into his room, heard someone cough and called out to a friend, "[H]e is at it again." Gaulke next saw defendant walking down the hallway. Defendant stopped and stood still momentarily, then produced a gun, pointed it at Gaulke, and shot him in the stomach.

After the shooting defendant quickly left the hotel, but in a short time he entered the yard office of the Chicago, Northwestern Transportation Company. There he approached the freight yards clerk and told him to call the police, explaining that he had just shot a man. Defendant produced two revolvers and ammunition, which he handed over to the freight yards clerk. When the police arrived defendant submitted to arrest without resistance.

In July 1974 commitment proceedings were brought against defendant, and as a result he was committed to the Minnesota Security Hospital at St. Peter. In September 1974, however, the county court reheard the matter and found there was insufficient

evidence upon which to continue defendant's commitment. His trial on the criminal charges then ensued.

Defendant's sole defense at trial, pursuant to Minn. St. 611.026, was that at the time of the shooting he was laboring under such a defect of reason from mental illness or mental deficiency as not to know the nature of the act, or that it was wrong. The jury was instructed that if it believed this defense, it should return a verdict of not guilty by reason of mental illness. The jury returned a verdict of guilty. On this appeal defendant contends that the verdict was not sustained by the evidence.

Defendant's outward behavior at the time of the shooting was described by several witnesses and is undisputed. The state, in addition, introduced the testimony of Dr. Carl Schwartz, its retained psychiatrist, concerning a conversation he had had with defendant on May 4, 1974. Defendant told Schwartz that he knew he had a gun and that it was loaded, that he was going to see a man, and that if the man "hassled" him in any way he was going to shoot him. Defendant told Schwartz that his intent was not merely to hurt the man but to kill him. Defendant told Schwartz that he did fire the gun and then became very frightened for a few moments and did not know whether he should run or not. Defendant, according to Schwartz, understood that the police would be looking for him, "because [quoting defendant] that's what they usually do to someone who breaks the law." Schwartz recalled defendant's saying that he knew he had broken the law, and that he had expected retribution. Finally, Schwartz testified that he had discussed morality with defendant, and that defendant had told him he knew it was wrong for anyone to hurt another physically.

Defendant's relatives testified to his strange behavior before the shooting, and Dr. John A. Graf, a psychiatrist, testified that defendant suffered from paranoid psychosis, a delusion of persecution. Graf's testimony indicates that defendant was suspicious of everything around him, and that he believed someone had implanted wires in his brain so as to control him by radio trans-

mission, and that defendant had built a radio wave jammer to prevent this control of his behavior by others.

There is little doubt from that evidence that defendant was suffering from mental illness, but under Minn. St. 611.026 he may not be excused from criminal liability unless that mental illness caused such a defect of reason that at the time of the incident defendant did not know the nature of his act or that it was wrong. There was sufficient evidence for the jury to believe that at the time of the incident defendant did know the nature of his act and also knew that it was wrong. The verdict, therefore, was adequately supported by the evidence.

Defendant contends, however, that it was reversible error to permit Dr. Schwartz to give his opinion whether defendant knew the nature of his act or that it was wrong, for the reason that there was insufficient foundation for such an opinion. The question of proper foundation is largely one for the discretion of the trial court, and we have held when the issue of insanity is raised in a criminal trial evidence should be received freely so the factfinder can take account of the entire man and his mind as a whole. State v. Rawland, 294 Minn. 17, 199 N. W. 2d 774 (1972). Given the strong evidence in the remainder of the record, moreover, which tended to show that defendant knew the nature of his act and that it was wrong, and in particular defendant's own comments on May 4 as related by Schwartz, it is not likely that the addition of Schwartz' formal, professional opinion on the matter had a substantial influence on the jury in reaching the verdict of guilty. See, State v. O'Geay, 299 Minn. 58, 216 N. W. 2d 636 (1974). We hold it was not error, and certainly not reversible error, to allow Schwartz to give his opinion.

Defendant urges that the instructions to the jury were erroneous in several respects. First, he argues that the court should not have placed on him the burden of proving by a preponderance of the evidence that he either did not know the nature of his act or that it was wrong. While recognizing that we have construed Minn. St. 611.026 as placing such a burden on the defendant

(State v. Mytych, 292 Minn. 248, 194 N. W. 2d 276 [1972]), he argues that the decision in Mullaney v. Wilbur, 421 U. S. 684, 95 S. Ct. 1881, 44 L. ed. 2d 508 (1975), requires that the state prove beyond a reasonable doubt that he did know the nature of the act and did know that it was wrong.

In Leland v. Oregon, 343 U. S. 790, 72 S. Ct. 1002, 96 L. ed. 1302 (1952), the court decided that an Oregon statute, which placed on a defendant the burden of proving his insanity beyond a reasonable doubt did not violate the Fourteenth Amendment right to due process of law. Defendant argues that Mullaney v. Wilbur, *supra*, overruled Leland v. Oregon, *supra*, but we note that the Leland case was cited in a footnote in Mullaney without disapproval, and that two members of the court in a concurring opinion specifically observed that Leland was not overruled. In view of these decisions by the United States Supreme Court, it does not appear to us that Minn. St. 611.026 is unconstitutional because it places the burden of proof on defendant.

Defendant argues, second, that it was reversible error for the trial court to inform the jury of Minn. St. 611.025, which states that a person is presumed responsible for his acts and that the burden of rebutting such presumption rests upon the defendant. He relies upon State v. Higgin, 257 Minn. 46, 99 N. W. 2d 902 (1959), in which we disapproved instructing the jury that after finding the presence of one element of an offense, another element could be presumed to be present. We so held in Higgin because the state has the burden of proving every element of an offense beyond a reasonable doubt. In the case at bar, however, the state had no burden of proving that at the time of the incident defendant knew the nature of his act and that it was wrong. The burden was on the defendant to prove this defense by a preponderance of the evidence, and the court's instruction on Minn. St. 611.025 simply explained this to the jury.

Defendant argues, third, that the court misinformed the jury of the meaning of the word "wrong" in Minn. St. 611.026 when it instructed that knowledge that the act was wrong refers to

the moral side, to know that the act is contrary to law. This was immediately followed by instructing that the jurors could take into account the entire man and his mind as a whole, that they could consider evidence relating to cognition, volition, and capacity to control behavior, and that they could consider the defendant's knowledge, awareness, and ability to understand his acts, his ability to choose and decide.

The instruction used, although it employed the phrase "contrary to law," was clearly directed to the issue whether defendant appreciated his act was wrong in a moral sense. The trial court's use of this phrase was clarified by its explanation that "[k]nowledge that the act was wrong refers to the moral side." The court apparently accepted the philosophic concept of a natural law under which certain rules of conduct—moral rules— inhere throughout the very fabric of the universe and which legislatures and courts have undertaken to reflect. An act which contravenes a properly enacted criminal statute, in the view of the naturalist, contravenes the moral law as well. While we are persuaded that the jury understood the instruction in this way, we think the better practice is to instruct the jury in the terms of the statute but with the explanation that the word "wrong" is used in the moral sense and does not refer simply to a violation of statute. See, State v. Rawland, 294 Minn. 17, 42, 199 N. W. 2d 774, 788 (1972).

Defendant complains that the trial court refused to instruct the jurors on what would happen to the defendant if they found him not guilty by reason of mental illness.[1] The essence of defendant's argument is that without knowing what the law provides in this regard, the jury is likely to believe that a verdict

---

[1] Under Minn. St. 631.19 a defendant found to have homicidal tendencies was automatically committed to the Minnesota Security Hospital; but under Rule 20.02, subd. 8, Rules of Criminal Procedure, the court now simply causes civil commitment proceedings to be instituted. Whether commitment follows depends upon the result in those proceedings.

of not guilty by reason of mental illness will set the defendant completely free and that he will not receive treatment. The argument is that the jury will therefore be likely to return a verdict of guilty when the verdict it really believes it should return is not guilty by reason of mental illness.[2] The trial court's refusal to instruct specifically on the disposition of defendant following a verdict of not guilty by reason of mental illness was not error.

Defendant argues it was improper for the trial court to allow the victim, Donald Gaulke, to exhibit the scars from his wound and describe the medical treatment he received, on the ground that this evidence tended to inflame the passions and prejudices of the jury. In State v. DeZeler, 230 Minn. 39, 41 N. W. 2d 313, 15 A. L. R. 2d 1137 (1950), we considered a similar challenge to the admissibility of demonstrative evidence, in that case photographs of a corpse. We said in that case (230 Minn. 46, 41 N. W. 2d 319, 15 A. L. R. 2d 1147):

"* * * Photographs are admissible as competent evidence where they *accurately* portray anything which it is competent for a witness to describe in words, or where they are helpful as an aid to a verbal description of objects and conditions, provided they are relevant to some material issue; and they are not ren-

---

[2] In its instructions, however, the court strongly charged the jurors with their duty to reach a verdict without concern for what would be the ultimate disposition of defendant's future: "Now jurors, in deciding the guilt or innocence of the defendant on each of these three counts or charges you should consider each count separately. You should not concern yourself about what may happen to the defendant if you find him guilty on one or more of these charges; nor should you concern yourself should you find him not guilty or not guilty by reason of mental illness. The laws of Minnesota place the responsibility for making those determinations upon the judge.

"If the State has proved the accused guilty beyond a reasonable doubt, say so. If the State has not proved the accused guilty beyond a reasonable doubt, say so. Keep constantly in mind that it would be a violation of your sworn duty to base your verdict on anything but the evidence in this case."

dered inadmissible merely because they vividly bring to jurors the details of a shocking crime or incidentally tend to arouse passion or prejudice."

See also State v. Tinklenberg, 292 Minn. 271, 272, 194 N. W. 2d 590, 591 (1972); State v. Steeves, 279 Minn. 298, 308, 157 N. W. 2d 67, 74 (1968). The evidence was relevant because the infliction of great bodily harm was an essential element of one of the offenses with which defendant was charged. Minn. St. 609.225. The trial court, therefore, did not abuse its discretion in admitting this evidence.[3]

Finally, defendant argues that the state was barred by collateral estoppel from undertaking to establish that at the time of the act he knew what he was doing was wrong. He argues that this issue was litigated and resolved favorably to defendant in the commitment proceedings. At the end of those proceedings, however, the county court applied Minn. St. 253A.07, subd. 17, which provides that one may be committed if he is mentally ill and hospitalization is necessary for his own welfare or the protection of society. This statute does not refer to whether the person knows the nature of his acts, nor does it refer to whether he knows that his acts are wrong. Nevertheless the county court included in its findings a statement that on April 26, 1974, the patient (Bott) shot Donald Gaulke in the stomach, and that at

---

[3] There are cases, of course, where even relevant evidence may be excluded on the ground that it is unfairly prejudicial. As stated in Rule 403, Federal Rules of Evidence: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

"Unfair prejudice" includes an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. See Advisory Committee's Note, The Judicial Council, Federal Rules of Evidence for U. S. Courts and Magistrates (1975) p. 25, and authority there cited. These considerations are addressed to the sound discretion of the trial court.

that time he was able to comprehend the nature of his act but was "unable to determine that such act was unjustified." This finding was gratuitous and not necessary to the decision in the county court. The issue in the commitment proceedings was only whether defendant was mentally ill and required hospitalization for his own welfare or the protection of society, and the decision of that issue does not estop the state from litigating whether at the time the defendant shot Gaulke he knew his act was wrong.

Affirmed.