**STATE of Minnesota, Respondent,**

v.

**Harvey Louis CARIGNAN, Appellant.**

No. 46338.

Supreme Court of Minnesota.

Aug. 11, 1978.

C. Paul Jones, Public Defender, Robert Oliphant, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., St. Paul, John Daniels, Jr., Sp. Asst. Atty. Gen., Minneapolis, W. R. Glaeser, County Atty., Chaska, for respondent.

PER CURIAM.

Defendant, who raised the insanity defense at his trial on charges of aggravated sodomy, Minn.St. 609.293, subd. 2, and attempted first-degree murder, §§ 609.17 and 609.185, was found guilty by a district court jury of both charges and was sentenced by the trial court to the maximum term of 30 years in prison on the sodomy charge. Defendant appeals from judgment of conviction, and we affirm.

Defendant's main contention on appeal is that the trial court erred in refusing to allow defense counsel to explain postverdict consequences of a finding of not guilty by reason of insanity and that the trial court erred in failing to instruct, sua sponte, on the consequences of such a verdict. The general approach of this court has been to prohibit any argument or instruction on the consequences of a jury verdict in a criminal case. *State v. Meany*, 262 Minn. 491, 115 N.W.2d 247 (1962); *State v. DePauw*, 243 Minn. 375, 68 N.W.2d 223 (1955); *State v. Gensmer*, 235 Minn. 72, 51 N.W.2d 680 (1951). The specific issue whether an exception to this rule should be made with regard to the effect of a verdict of not guilty by reason of insanity was carefully considered and decided negatively by this court in *State v. Bott*, 310 Minn. 331, 246 N.W.2d 48 (1976). The Bott case is dispositive of this contention of defendant.

Defendant's other contentions relate to the trial court's refusal to grant a mistrial when the prosecutor cross-examined defendant about his criminal record, the trial court's denial of surrebuttal testimony by defendant's psychiatric witness, the trial court's denial of mid-trial sequestration of the jury after a potentially prejudicial newspaper story was published, and whether the evidence was such as to mandate a finding of not guilty by reason of mental illness.

Defense counsel opened the matter of defendant's juvenile record on direct examination of defendant and, even if the prosecutor's questioning of defendant was error—something we need not decide—the trial court did not err in denying a mistrial because defense counsel had already elicited evidence about defendant's prior criminal record, as well as evidence of another violent crime for which defendant had not been prosecuted. Under the circumstances, defendant simply could not show that the questions about his juvenile record prejudiced him.

The trial court did not abuse its discretion in denying the defense permission to

call its psychiatric expert in surrebuttal because he already had had an opportunity to testify on the matter to which the prosecutor's testimony related.

■ Defendant has not shown that the trial court's denial of his mid-trial motion for sequestration of the jury prejudiced his case. In fact, there is no evidence on the record that the jury ever read the article which prompted the motion. We must presume that they did not because the trial court carefully instructed them not to expose themselves to any media accounts of the trial. Finally, it appears that even if the jury had read the article in question—which was about a similar attack by defendant on another young woman—it is not clear that the jury would have been prejudiced by it. As we indicated, the defense on its own elicited testimony about one such other incident.

■ There is no merit to defendant's contention that the evidence mandated a verdict of not guilty by reason of insanity. In *State v. Hoskins*, 292 Minn. 111, 193 N.W.2d 802 (1972), we affirmed a conviction even though the defendant's expert testimony on the issue of insanity was unrebutted. Here the testimony of the defendant's expert was rebutted.

Affirmed.

OTIS, Justice (dissenting in part, and concurring in part).

I concur in the result, but because in *State v. Bott* we did not attempt to analyze or consider the merits of changing the rules governing instructions where insanity is a defense, I would now prospectively do so.

Generally, courts approving disposition instructions base their rulings on the prejudicial effect of a jury's erroneous belief that an acquittal on grounds of insanity will free the defendant. In *People v. Cole*, 382 Mich. 695, 720, 172 N.W.2d 354, 366 (1969), the court viewed its decision as a choice between:

" * * * 1) the possible miscarriage of justice by imprisoning a defendant who should be hospitalized, due to refusal to so advise the jury; and 2) the possible 'invitation to the jury' to forget their oath to render a true verdict according to the evidence by advising them of the consequence of a verdict of not guilty by reason of insanity."

*See also, State v. Babin*, 319 So.2d 367, 381 (La., 1975 on Rehearing); *Kuk v. State*, 80 Nev. 291, 392 P.2d 630 (Nev.1964).

Minnesota does not have an automatic commitment rule. Rule 20, Rules of Criminal Procedure, provides that when a defendant is found not guilty by reason of mental illness or mental deficiency, the court shall cause civil commitment proceedings to be instituted against him. The defendant is detained pending completion of the proceedings. If the crime charged was a felony or gross misdemeanor and the defendant is committed, he shall not thereafter be released from commitment if the trial court determines, after hearing on his proposed release, that he continues to be mentally ill or deficient and dangerous to the public.

If the jury knows the legal consequences of an acquittal by reason of mental illness, its verdict will not be the product of a "mistaken impression that the defendant will necessarily be freed or be indefinitely committed to a mental institution." *State v. Krol*, 68 N.J. 236, 265, 344 A.2d 289, 304 (1975). Since the court cannot prevent the jury from speculating on the results of its verdict, it should at least ensure that such considerations are based on accurate information.

Accordingly I would prospectively authorize trial courts to instruct the jury on the following provisions of Rules 20.02, Subd. 8(1) and (4), Rules of Criminal Procedure, whenever requested by the defendant to do so:

"Subd. 8 Legal Effect of Finding of Not Guilty by Reason of Mental Illness or Deficiency.

"(1) Mental Illness. When a defendant is found not guilty by reason of mental illness, and the defendant is under civil commitment as mentally ill, the court shall order that the commitment be con-

tinued, and if not under commitment, the court shall cause civil commitment proceedings to be instituted against him and that the defendant be detained in a state hospital or other facility pending completion of the proceedings. The commitment or continuing commitment in felony and gross misdemeanor cases shall be subject to the supervision of the trial court as provided by Rule 20.02, subd. 8(4).

"(4) Continuing Supervision. In felony and gross misdemeanor cases only, the trial court shall be notified of any proposed termination of the civil commitment, and the court, after notice to the parties, shall hold a hearing thereon. If the court determines that the defendant is mentally ill or deficient and dangerous to the public, the defendant shall not be discharged from civil commitment. Otherwise, the civil commitment shall be terminated and the defendant discharged therefrom."

WAHL, Justice (dissenting in part, and concurring in part).

I join the opinion of OTIS, J., concurring in the result but proposing to prospectively change the rule governing instructions where insanity is a defense.

IRVINE, Justice (concurring specially).

I concur in the majority opinion. I would oppose instructing the jury as to Rule 20.02, subd. 8(1) and (4) for the reason that the "civil commitment proceedings" might not result in a commitment.