**STATE of Minnesota, Respondent,**

v.

**James Edward LEE, Appellant.**

**No. 48409.**

Supreme Court of Minnesota.

Aug. 3, 1979.

C. Paul Jones, Public Defender, Robert Oliphant, Allen E. Christie, Jr., Asst. Public Defenders, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen, Norman B. Coleman Jr., Sp. Asst. Attys. Gen., St. Paul, DeWayne P. Mattson, County Atty., Rochester, for respondent.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an appeal by defendant James Lee from a conviction for first-degree murder by a jury in Winona County District Court. The court sentenced the defendant to life imprisonment, pursuant to Minn.St. 609.-185(1). We affirm.

The questions presented on appeal are:

1. Did the trial court err in refusing defendant's request for an instruction on the lesser included offense of manslaughter in the first degree?

2. Were defendant's Fourth Amendment rights violated when the trial court admitted into evidence a shotgun seized near the farmhouse in which the defendant's former wife resided?

3. Did the trial court err in admitting into evidence testimony concerning an in-

criminating statement that defendant made about 4 weeks before the killing?

4. Does the evidence establish beyond a reasonable doubt that the killing was premeditated?

5. Was the defendant denied a fair trial because the trial court refused to explain to the jury the consequences of a verdict of not guilty by reason of insanity?

On the evening of May 16, 1977, defendant was riding with others in a friend's car in Rochester after seeing a movie and consuming four to six beers. Defendant had a sawed-off shotgun in his possession. About 1:30 a. m., defendant was about to leave the car and return to his own car when he noticed a Mustang coming down the street. He quickly got back into the car and rode around the block as the Mustang followed. Defendant and the others then drove into a shopping center parking lot as the Mustang continued to follow and maneuvered the car behind the Mustang as it left the parking area.

Defendant asked whether he should shoot out the Mustang's taillight, and although one of his friends said no, defendant fired in the direction of the other car. The Mustang immediately sped away, and a high speed chase ensued. As this occurred, a deputy sheriff observed the chase and pursued the vehicle in which defendant was riding. Defendant started yelling instructions to the driver, who finally pulled into the Apache Mall parking lot where the car fishtailed, spun around, and died. The deputy drove up to the front of the car and stopped about 3 feet away. Defendant told the driver to "ram him, ram him," but she was unable to do so because the car motor was still dead. As the deputy hurried towards the driver, defendant started to get out of the car and said, "I've got to kill him, I've got to kill him." He then fired the shotgun twice, fatally wounding the deputy.

Immediately after the shooting, defendant ran to the police car and erratically drove away. The police car was later found abandoned, both front tires flat as a result of being driven over a curb. Defendant had escaped to his car and driven to the farmstead where his former wife was residing, about 25 to 30 miles outside of Rochester. Acting on information provided by one of the defendant's friends, the police went to the farmstead and arrested the defendant.

1. Defendant contends that the trial court should have instructed the jury as to the lesser crime of manslaughter in the first degree. It is argued that Drs. Robert Niven and John Graf testified that the defendant was in a state of extreme fear or panic at the time he shot the decedent, and that such fright constitutes evidence from which the jury could have found that the defendant acted in a heat of passion.

■ Minn.St. 609.20(1) defines manslaughter in the first degree as:

"Intentionally caus[ing] the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances; * * *"

The test for determining whether lesser degrees of a crime are to be submitted to a jury is: (1) whether the evidence would reasonably support a conviction of the lesser crime, and (2) whether the evidence would also support a finding of not guilty of the greater crime. *State v. Merrill,* 274 N.W.2d 99 (Minn.1978); *State v. Leinweber,* 303 Minn. 414, 422, 228 N.W.2d 120, 125 (1975). Where the evidence warrants such an instruction, the trial court must give the appropriate instructions. Unless the defendant waives such instructions, it is error not to submit the lesser degrees to the jury, except in the extraordinary situation where failure to do so is otherwise supported by a proper exercise of the trial court's discretion and no prejudice to the defendant results. 303 Minn. 422, 228 N.W.2d 126.

■ Although manslaughter may be a lesser included offense in certain homicides,

in the instant case the situation does not fall within the ambit of § 609.20(1). Under appropriate circumstances, fright may be considered within the meaning of "heat of passion"; however, there must be words or acts of another that would provoke a person of ordinary self-control under like circumstances. Here, the defendant's response was not provoked by any particular words or acts of the decedent and was not like that of a person of ordinary self-control under like circumstances.

After catching up with the car in which defendant was a passenger, the deputy got out of his car, crossed between the two vehicles, and moved towards the driver's window. The deputy had neither said nor done anything to provoke the defendant sufficiently to cloud his reason and weaken his will power, thus mitigating his criminal culpability. See, *State v. Boyce*, 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969). Consequently, it cannot be said that defendant acted in such a heat of passion that instructions on the lesser included offense were required.

Further support for the trial court's determination is found in the recently decided case of *State v. Merrill, supra.* After consuming 12 beers and ¾ of a pint of brandy, the defendant murdered his landlady during a dispute over his unpaid rent. The defendant was charged with murder, and the jury was given instructions for murder in the first and second degrees after the trial court refused to instruct the jury as to first degree manslaughter. Following his conviction for first degree murder, defendant appealed, arguing that the jury could have reasonably found that he had intended only to inflict great bodily harm, not to murder her. This court rejected the assertion by holding that since premeditation and intent were present, as the jury so found, the absence of instruction on the lesser offense did not prejudice the defendant. 274 N.W.2d 105. In the instant case, since the jury found that premeditation and intent were present, the defendant similarly was not prejudiced by the absence of instruction concerning first degree manslaughter.

■ 2. It is also contended that the trial court erred in admitting into evidence a shotgun obtained by an allegedly unconstitutional search and seizure to which no consent had been given.

After the police had arrested the defendant, they obtained a search warrant and searched the farmhouse and the adjacent buildings and property for the shotgun. They discovered the shotgun beneath a manure spreader located about 60 yards from the farmhouse. At the omnibus hearing, the trial court found that the search warrant was fatally defective, but declared that the shotgun was admissible either because the land on which it was found was not controlled by the defendant or his former wife or because the shotgun could be considered abandoned.

We do not deem it necessary to determine whether the gun was found in the course of an unconstitutional search, although we do note that the gun was discovered approximately 180 feet from the house where defendant resided and was hidden under a cultivator that defendant had no right to use and that belonged to his landlord. We do not decide the issue because the introduction of the shotgun was not prejudicial to defendant as a matter of law. Defendant does not dispute that he had a shotgun or that he fired it and killed the deputy. Even if we were to assume the weapon was impermissibly introduced into evidence, the error was harmless in light of the overwhelming evidence bearing on defendant's guilt.

3. Defendant further argues that the trial court erroneously admitted into evidence, over objection, a witness's testimony that defendant had stated about 4 weeks prior to the shooting that if he were stopped by a policeman, he (the defendant) would shoot him. Defendant insists that the evidence is remote and irrelevant, that defendant made the statement to inflate his

image, and that the testimony is cumulative because another witness had already testified that defendant had made that statement.

■ Any evidence that logically tends to prove or disprove a material fact in issue is relevant. *Boland v. Morrill*, 270 Minn. 86, 98, 132 N.W.2d 711, 719 (1965); Rule 401, Minnesota Rules of Evidence. Whether evidence of past events and practices objected to on the ground of relevancy is admissible is a decision within the discretion of the trial court. See, *Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672, 678 (Minn.1977).

There is no absolute yardstick by which an event or practice can be held to be remote. In *State v. Swain*, 269 N.W.2d 707 (Minn.1978), the defendant argued that testimony concerning a threat that he had made to his mother 10 months before he murdered her and had made only once was too remote and irrelevant. This court held that it was not too remote, and that because the testimony bore on intent, it was not an abuse of the trial court's discretion to admit it. 269 N.W.2d 714.

■ Similarly, in the instant case the trial court had wide discretion to determine whether evidence was too remote and irrelevant. Given defendant's other statements, such as repeating "I've got to kill him" and "ram him," the trial court did not abuse its discretion in admitting evidence of the prior statement to show premeditation. Furthermore, if the testimony were remote, that goes only to the weight given to the evidence by the jury. 254 N.W.2d 678.

Whether the statement was intended to bolster the defendant's image or to manifest premeditation is a matter for the jury to determine. And, even if the testimony were cumulative, in light of all of defendant's acts and statements, any error that the trial court may have made in this particular ruling was harmless.

4. The sufficiency of the evidence used to establish premeditation [1] beyond a reasonable doubt is also challenged. Defendant maintains that he suffers from mental abnormality that precluded his possessing the required state of mind for first or second degree murder, that he was intoxicated at the time of the shooting, and that there was no evidence of a plan to kill the deputy.

■ Premeditation denotes a pre-existing reflection and deliberation involving more than a mere intent to kill. *State v. Keaton*, 258 Minn. 359, 363, 104 N.W.2d 650, 654 (1960). Being a process of the mind, premeditation is subjective and therefore incapable of direct proof, *State v. Gavle*, 234 Minn. 186, 197, 48 N.W.2d 44, 51 (1951); therefore, it must be found by reasonable inference from the other evidence. *State v. Campbell*, 281 Minn. 1, 12, 161 N.W.2d 47, 55 (1968). The jury in this case was charged in part with the duty to determine whether the defendant had premeditated the killing, and it found that he had done so.

Upon review, this court will examine the evidence in the light most favorable to the verdict and assume the jury disbelieved any testimony that conflicts with the result reached. If, on the basis of the evidence in the record, the jury could have found as it did, this court will not upset the result. *State v. Oevering*, 268 N.W.2d 68 (Minn. 1978); *State v. Strimling*, 265 N.W.2d 423 (Minn.1978); *State v. Thompson*, 273 Minn. 1, 139 N.W.2d 490, certiorari denied, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966);

---

1. Premeditation is defined under Minn.St. 609.-18: "For the purposes of sections 609.185 [murder in the first degree] and 609.19 [murder in the second degree], 'premeditation' means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission."

The relevant definition of murder in the first degree is set forth in Minn.St. 609.185(1): "Causes the death of a human being with premeditation and with intent to effect the death of such person or of another  *  *  *."

*State v. Norgaard,* 272 Minn. 48, 136 N.W.2d 628 (1965).

The witnesses present at the shooting consistently testified that the defendant did not appear to be drunk, that his speech was not slurred, and that he did not lose coordination. Although the defendant may have had a personality disorder,[2] none of the expert witnesses testified that the defendant was insane. On the contrary, Dr. Carl Schwartz, forensic psychiatrist, felt that defendant was sane under the M'Naughten rule.[3] Thus, there is ample evidence to show not only that defendant's mental state did not prevent his having the requisite premeditation, but that he had premeditated the killing.

5. Finally, it is argued that defendant was denied a fair trial by the lower court's refusal to explain to the jury the consequences of a verdict of not guilty by reason of insanity.

Although recognizing that a few jurisdictions allow the jury to be instructed as to the consequences of a verdict of not guilty by reason of insanity, see, e. g., *Lyles v. United States,* 103 U.S.App.D.C. 22, 254 F.2d 725 (1957), certiorari denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958); *People v. Cole,* 382 Mich. 695, 172 N.W.2d 354 (1969); *State v. Hood,* 123 Vt. 273, 187 A.2d 499 (1963), we follow the traditional rule that the assessment of punishment imposed on a defendant is a matter of law within the exclusive province of the court. This issue was addressed less than a year ago in *State v. Carignan,* 271 N.W.2d 442 (Minn.1978), in which this court reaffirmed *State v. Bott,* 310 Minn. 331, 337, 246 N.W.2d 48, 53 (1976), where the trial court

was held not to have committed error in refusing to instruct the jury as to the disposition of a defendant found not guilty by reason of mental illness. Further, under our rules of criminal procedure, defendant had a right to request that the question of mental illness be separated from the question of guilt. See, Rule 20.02, subd. 6, Rules of Criminal Procedure.

Affirmed.

OTIS, Justice (concurring specially).

I adhere to the views expressed in the dissent in *State v. Carignan,* 271 N.W.2d 442, 444 (Minn.1978) (Otis, J., dissenting in part and concurring in part), but do not consider this an appropriate case to apply the rule there advocated.

---

2. Several psychiatrists and psychologists were called by the defendant and the state. Their testimony indicated generally that defendant suffers from strong asocial tendencies and has a paranoid-schizoid personality.

3. The M'Naughten rule is contained in Minn.St. 611.026, which provides: "No person shall be tried, sentenced, or punished for any crime while mentally ill or mentally deficient so as to

be incapable of understanding the proceedings or making a defense; but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act, or that it was wrong."