STATE of Minnesota, Respondent,

v.

Robert W. EDWARDS, Appellant.

No. C4–82–1110.

Supreme Court of Minnesota.

Jan. 13, 1984.

C. Paul Jones, State Public Defender by Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Richard Osborne, J. Michael Richardson, Asst. Co. Attys., Beverly J. Wolfe, Staff Atty., Minneapolis, for respondent.

## OPINION

TODD, Justice.

Defendant was charged by indictment with first-degree premeditated murder, Minn.Stat. § 609.185(1) (1982), in the shooting death of his brother-in-law, Gerald Howard, in the entryway to a south Minneapolis bar early on November 28, 1981. The trial court also submitted second-degree intentional murder, section 609.19(1), and first-degree death-in-the-course-of-a-misdemeanor manslaughter, section 609.-20(2), but refused to submit first-degree heat-of-passion manslaughter, section 609.-20(1), and second-degree culpably-negligent manslaughter, section 609.205(1). The jury found defendant guilty of second-degree murder. The trial court sentenced defendant to an executed prison term of 203 months, which is the presumptive sentence for second-degree murder (a severity level X offense) by a person with defendant's criminal history score (three). On his appeal from judgment of conviction and from the order denying his post-trial motion, defendant contends that his conviction should be reversed outright or reduced to first-degree heat-of-passion manslaughter. Alternatively, defendant seeks a new trial on the grounds that (1) the trial court prejudicially erred in permitting the state to use defendant's two prior convictions to impeach his

credibility and in allowing the prosecutor to question defendant about the details underlying one of those convictions, and (2) the trial court prejudicially erred in refusing to submit heat-of-passion manslaughter and culpably-negligent manslaughter, in refusing to give a requested accident instruction, and in giving certain instructions on self-defense, the duty of counsel to present evidence, and the evaluation of unimpeached testimony. We affirm.

Defendant went to the bar with a friend of his, Henry Lumpkin, on the evening of November 27. Lumpkin testified that on the way to the bar defendant asked him for advice on what to do about Howard, who defendant said was abusing his sister. Lumpkin testified that defendant continued talking about the matter at the bar and said at one point that he was going to get Howard. At some point Howard showed up at the bar. After "last call" for drinks was announced, he left. One witness testified that a minute or two later defendant, who is black, said, "I am going to kill the Nigger." When the bartender told defendant that he wasn't, defendant apparently said, "I am not going to do nothing up in here." Defendant left the bar 5 minutes later and entered the area between the inner door and the outer door.

Defendant's testimonial version of what happened was that Howard was standing there with his hand in his pocket and that Howard started pulling something out. Defendant testified that he believed that Howard had a gun inside his coat and was going to shoot him through the coat. He testified that he therefore pulled out his gun, held it close to Howard's head, and told Howard to "freeze." He testified that he cocked the gun when Howard continued his suspicious arm movement and that at that moment Sheila Bowie, his brother's wife, grabbed him from behind and pulled on him. He testified that when he resisted her pulling, the gun discharged. He denied that he intended to pull the trigger and he claimed that he fled the scene only because someone told him to do so.

One witness corroborated defendant's testimony. This witness was the girlfriend of a friend of both defendant and Howard. She admitted that it took her several months before she came forward and made a statement.

The state's witnesses contradicted the defense version of what happened. Sheila Bowie, for example, denied that she went into the entryway and pulled on defendant. She testified that it was not until afterward that she and her sister Debbie approached defendant and said something. Her sister corroborated this. Other witnesses testified similarly. Lumpkin testified that when he saw defendant standing with the gun 2 to 3 inches from Howard's head he turned and walked toward the bar and then heard the shot. Henry Adams, a bus driver, testified that he saw the two Bowie girls walk up to defendant after the shooting and asked, "What have you done?" He testified that after the shooting defendant said, "Don't no one come near me," then left. Dennis Faison, the doorman, testified that he did not see Lumpkin or the Bowie girls near defendant but that he saw defendant standing with the gun close to Howard's head. He testified that the Bowie sisters were all at the bar when the shooting occurred. Roxanne McDavid testified similarly. Sharon Branson, the bartender, testified that after she heard the shot she looked up and saw Sheila and Debbie Bowie standing by defendant. Kathy Johnson testified that the Bowie sisters were at the bar when she heard the gun go off.

■ 1. Defendant's contention that the evidence was legally insufficient is without merit. He never claimed that he intentionally fired the gun in self-defense. Rather, he claimed that he pointed the gun at Howard in self-defense and the firing of the gun was accidental. However, there was sufficient evidence that the firing was not accidental but intentional. Defendant's alternative claim that the evidence at most established that he intentionally killed Howard in the heat-of-passion provoked by words or acts as would provoke a person of

ordinary self-control under like circumstances is also without merit. Over a month had passed since the incident in which Howard assaulted defendant's sister and defendant, by his own testimony, felt that the matter between Howard and his sister was his sister's "business," not his. A person of ordinary self-control would not kill under such circumstances.

2. Defendant's first claim of trial error relates to the trial court's allowing the prosecutor to use defendant's two prior felony convictions to impeach his credibility. Defendant also argues that the trial court erred in allowing the prosecutor to question him about the facts underlying one of these convictions and that the prosecutor committed misconduct in his reference to this evidence in his closing argument.

■ (a) The issue of using prior convictions to impeach a defendant is an issue which we have decided on numerous occasions in the last several years. The applicable rule is Minn.R.Evid. 609. Leading cases of this court applying the rule include *State v. Lee*, 322 N.W.2d 197 (Minn.1982); *State v. Bettin*, 295 N.W.2d 542 (Minn. 1980); and *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979). Factors that support use of the convictions in this case include the fact that the more recent of the two convictions was very recent, the fact that the credibility of defendant was a key issue, the fact that the use of the convictions did not have the effect of keeping defendant's testimony from the jury, and the fact that the convictions were not for the same offense as that with which defendant was charged. An additional factor in this case is that the defense was allowed to establish the victim's prior criminal record as part of its effort to show his propensity for violence. In such a situation, it is only fair to at least admit the defendant's prior convictions as they bear on the defendant's credibility, or else the jury might well wrongly conclude from the absence of reference to defendant's record that defendant has a clean record.

■ (b) It is true that normally the prosecutor may not elicit evidence concerning the facts underlying prior convictions used to impeach a defendant's credibility. However, there are exceptions, one being when the defense "opens the door," as in *State v. Gardner*, 328 N.W.2d 159 (Minn.1983).

In this case the defendant was questioned by his own counsel about injuries he himself had sustained as a result of being stabbed once. Defendant even exhibited his scars to the jury. Defendant testified that he got those wounds when he was going with a white woman and her cousins jumped him at her birthday party. He testified that, after having been stabbed before, he knew what it was like and was therefore particularly fearful of it happening again. With permission of the trial court, the prosecutor then elicited from defendant an admission that he had once stabbed an off-duty police officer. In closing argument the prosecutor, without objection by defense counsel, alluded to this evidence.

■ We conclude, as the trial court did, that the defendant opened up the subject on direct examination and that it was proper for the prosecutor to ask the limited questions he asked on cross-examination.[1]

1. The state argues in its brief that a defendant should not be able to run down a deceased in a homicide case such as this without subjecting his own character to similar scrutiny. For a discussion of the admissibility on self-defense of evidence of the victim's bad character, *see State v. Bland*, 337 N.W.2d 378 (Minn.1983). The counter argument to the state's argument is that the rule permits only rebuttal evidence that "squarely meets" the defendant's evidence—that is, permits only evidence that goes to the victim's character, not to defendant's character. *See* 2 D. Louisell and C. Mueller, Federal Evidence § 139, at 110 (1978). Professors Wright and Graham discuss the issue as follows:

> If the defendant attacks the character of the victim, can the prosecution rebut by introducing evidence of the character of the defendant? Wigmore and other writers favored an affirmative answer and this has a certain appeal in terms of "psychological relevance." However, the common law rule, except in a few states, was apparently to the contrary. At least in the case of the claim of self-defense, one could plausibly argue under Rule

3. Defendant's final contention is that the trial court prejudicially erred in refusing to submit heat-of-passion manslaughter and culpably-negligent manslaughter, erred in refusing to give a requested accident instruction, and erred in giving certain other instructions.

■ (a) The general rule is that a trial court has to submit a lesser offense only if it is a so-called lesser-included offense and only if there is evidence that produces a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser offense. *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975).

■ Whether an offense is a lesser-included offense is sometimes an issue, but not in this case. Both first-degree heat-of-passion manslaughter and second-degree culpably-negligent manslaughter are lesser-included offenses of first-degree murder under §§ 609.04, subd. 1(1), and 631.14. The real issue in this case is whether there was evidence sufficient to satisfy the rational basis test for submission of lesser-included offenses.

■ (i) Murder cases in which we have been asked to determine whether the trial court erred in refusing to submit first-degree heat-of-passion manslaughter include, in chronological order, *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975); *State v. Swain*, 269 N.W.2d 707 (Minn. 1978); *State v. Lee*, 282 N.W.2d 896 (Minn. 1979); *State v. Nurmi*, 336 N.W.2d 65 (Minn.1983). This case is controlled by *Swain, Lee,* and *Nurmi,* cases in which we upheld the trial court's refusal to submit

first-degree heat-of-passion manslaughter. In this case, as in those cases, there was not any evidence that the defendant's response was provoked by any particular act or words of the decedent as would provoke a person of ordinary self-control under similar circumstances.

(ii) Murder cases in which we have considered the issue of submission of second-degree culpably-negligent manslaughter include, in chronological order, *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975); *State v. Swanson*, 307 Minn. 412, 240 N.W.2d 822 (1976); *State v. Malzac*, 309 Minn. 300, 244 N.W.2d 258 (1976); and *Wolfe v. State*, 293 N.W.2d 41 (Minn.1980).

In *Leinweber*, the trial court instructed the jury as to second-degree intentional murder, third-degree murder, and second-degree culpably-negligent manslaughter, but refused to submit first-degree heat-of-passion manslaughter. In the opinion, which held that the trial court erred in refusing to submit heat-of-passion manslaughter, we stated in passing that "clearly" the court properly submitted culpably-negligent manslaughter "as the jury might reasonably have inferred from the defendant's own factual account of the shooting that, although he claimed it was a 'total accident,' his actions in causing the rifle to discharge were culpably negligent and created an unreasonable risk of causing great bodily harm or death to another." 303 Minn. at 417, 228 N.W.2d at 123.

In *Swanson*, the defendant was charged with first-degree heat-of-passion manslaughter and was found guilty of the lesser offense of second-degree culpably-negli-

---

404(a)(2) that the evidence of the defendant's character for violence does tend to "rebut" proof of the victim's character offered to prove that he was the first aggressor. There is no evidence that the Advisory Committee ever considered this issue, but the structure of the rule tends to suggest that proof of the character of the accused and of the victim were intended to be separable and that the defendant can attack the character of the victim without exposing his own character to prosecutorial attack.

22 C. Wright and K. Graham, Federal Practice and Procedure § 5237, at 406 (1978) (footnote

omitted). Cases holding that introduction on self-defense of evidence of the victim's violent character does not permit the prosecutor to offer similar evidence about the defendant include *Jones v. United States*, 434 A.2d 463 (D.C. App.1981), and *Keith v. State*, 612 P.2d 977 (Alaska 1980). This approach is criticized in Shea, Circumstantial Evidence under New York's Proposed Code of Evidence, 47 Brook L.Rev. 1373, 1377 (1981). We do not decide the issue because we uphold the admissibility of the evidence on the ground that defense counsel opened the door.

gent manslaughter. The defendant fired a total of four shots at the victim as the victim was advancing at him. All four bullets hit the victim in the trunk area, with one bullet passing through the heart. Defendant testified that although he wanted to stop the victim and intended to shoot him, he did not intend to kill him. On appeal he argued that the trial court erred in submitting the lesser offense over defense objection; stated differently, he argued that in view of his testimony he could not properly be found negligent but had to be found either guilty of first-degree manslaughter or not guilty. We rejected this argument, holding that while the jury could have found the defendant's act indicated an intent to kill, the jury was not compelled to find that but could properly have found him culpably negligent:

> If the jury believed defendant's testimony, it could reasonably have found him culpably negligent in several respects: (1) In entering and remaining in the kitchen armed with a weapon during a heated argument; (2) in pointing the gun in Tarver's direction and firing, thereby consciously taking the chance of killing him even though not intending to do so; (3) in failing to shoot Tarver in the leg or arm or other portion of the body which might have stopped him but not caused fatal injury. If defendant did not intend to kill Tarver, he was culpably negligent in that he consciously took the chance of causing Tarver's death in allowing his gun to be pointed so that the shots entered the trunk area. Defendant's intentional act of shooting Tarver, while not intending to kill him, is an act which a reasonably prudent man would recognize as involving a strong probability of death to Tarver * * *. The jury therefore reasonably could have convicted defendant of second-degree manslaughter, as it did, because of causing Tarver's death.

307 Minn. at 416, 240 N.W.2d at 825.

In *Malzac*, in upholding a refusal to submit culpably-negligent manslaughter in a second-degree murder case even though the defendant had testified that the killing was accidental, we pointed out that there was unimpeached expert testimony which established that the shooting could not have occurred as the defendant described. We stated:

> Arguably, *Swanson* could be read to support the proposition that a second-degree manslaughter instruction ought to have been given here because defendant took the stand and said that the homicide was an accident. But to so read *Swanson* goes too far. In that case Swanson's testimony established that the shooting incident could have occurred as described by him. Unimpeached expert testimony in this case established that the shooting incident could not have happened as related by Malzac. We therefore hold that the trial court exercised good judgment in refusing to give jury instructions on the lesser and included crimes of murder in the third degree and manslaughter in the second degree.

309 Minn. at 308, 244 N.W.2d at 263.

In *Wolfe*, the petitioner, who was convicted of second-degree murder, argued in an appeal from an order denying postconviction relief that the trial court erred in refusing to submit culpably-negligent manslaughter. As in *Swanson*, the objective facts in the case suggested an intentional killing. Unlike in *Swanson*, the petitioner did not testify at his trial and all the other evidence pointed toward the conclusion that he intentionally killed the victim. Under the circumstances, we held that there was no rational basis for a finding that the stabbing was an accident resulting from the petitioner's culpable negligence.

In this case the state impliedly concedes that the evidence would have been sufficient to support a finding of culpably-negligent manslaughter. However, it argues that there was no rational basis for the jury to find defendant not guilty of the greater lesser offense that was submitted, first-degree death-in-the-course-of-a-misdemeanor manslaughter, and guilty of culpably-negligent manslaughter. The state argues that pointing a gun at the victim

clearly constituted a misdemeanor unless defendant was acting in self-defense in doing so. The state argues that if the jury had concluded that defendant acted in self-defense—*i.e.*, acted reasonably—in pointing the gun at the victim, then the jury could not have found defendant guilty of culpably-negligent manslaughter but had to find defendant not guilty. It argues that if, on the other hand, the jury had concluded that defendant did not act reasonably in pointing the gun, then the jury would have found defendant guilty of first-degree death-in-the-commission-of-misdemeanor manslaughter, not second-degree culpably-negligent manslaughter. The trouble with this argument is that if defendant acted reasonably in pointing the gun, he would not have committed a misdemeanor in pointing the gun; yet, the jury could have found him not guilty of second-degree murder and guilty of culpably negligent manslaughter on the theory that he was culpably negligent in the handling of the gun while pointing it.[2]

An alternative theory, not advanced by the state, would be to rely on *Malzac* and hold that the expert testimony that the victim died from a contact wound, when considered in connection with all the other evidence, precluded the jury from *rationally* accepting the evidence that the gun discharged as defendant was resisting being pulled by someone. However, although the issue is close, we conclude that the trial court should have submitted the offense and that it was error not to do so.

Although we believe that the court erred in failing to submit the offense, we do not believe that the error was prejudicial. Given the strength of the state's case and the relative weakness of the defendant's case and given the fact that the jury rejected the other manslaughter offense submitted to it,[3] we believe that the jury would have rejected the offense of second-degree culpably-negligent manslaughter even if the trial court had submitted it.

(b) Defendant also argues that the trial court prejudicially erred in refusing to submit a requested accident instruction stating as follows:

There is evidence in this case that the gun which discharged and killed Gerald Howard was fired accidentally. If you find that the act of discharging the firearm was committed through misfortune or by accident under circumstances that show no evil purpose or evil intention, then Robert W. Edwards does not thereby commit a crime. The State has the burden of proving beyond a reasonable doubt that the discharge of the firearm was not because of an accident or misfortune.

We have considered the issue of whether it was error to refuse to give an accident instruction in a number of cases, including *State v. Frost*, 342 S.W.2d 317 (Minn., 1983); *State v. Stapek*, 315 N.W.2d 603 (Minn.1982); *State v. Harris*, 298 N.W.2d 356 (Minn.1980); *State v. Crisler*, 285 N.W.2d 679 (Minn.1979); and *State v. Schluter*, 281 N.W.2d 174 (Minn.1979).

**2.** It is arguable that the trial court erred in submitting first-degree death-in-the-commission-of-a-misdemeanor manslaughter. *See State v. Nunn*, 297 N.W.2d 752 (Minn.1980), and *State v. Adams*, 295 N.W.2d 527 (Minn.1980), indicating that if the underlying crime may be characterized as a felony, then it is appropriate to submit felony-murder but not death-in-the-commission-of-a-misdemeanor manslaughter. If the underlying conduct in this case, pointing a gun, was unjustified, then it constituted the felony offense of assault with a dangerous weapon and not just a misdemeanor offense of pointing a gun at another person.

**3.** In a number of cases in which we have concluded that an error in not submitting a lesser

offense was nonprejudicial, we have stated that the jury's rejection of other lesser offenses submitted supported our conclusion that the error was nonprejudicial. *See, for example, Wolfe v. State*, 293 N.W.2d 41 (Minn.1980). We believe that in this case the jury's rejection of the other manslaughter offense submitted to it is a fact that supports our conclusion that the error in failing to submit culpably-negligent manslaughter was nonprejudicial. We recognize, however, that there may be cases in which the jury's rejection of other lesser offenses submitted says nothing about the likelihood that they also would have rejected a different offense if submitted.

The general rule is that it is not error to refuse a specific accident instruction, even when the defendant claims that the homicide was accidental, so long as the court's instructions on intent and related matters are correct. We believe that the trial court's instructions on intent in this case were adequate. Even if the court had submitted culpably-negligent manslaughter, the court would not have had to submit the requested instruction because, as in the *Frost* case, the requested instruction was an inaccurate statement of the law.

(c) Defendant's final contention is that the trial court prejudicially erred in giving certain instructions on self-defense, the duty of counsel to present evidence, and the evaluation of unimpeached testimony.

■ The court's instructions on self-defense were based on CRIMJIG 7.06 (self-defense—death not the result) rather than CRIMJIG 7.05 (self-defense—causing death). This was as it should be. The latter is useful only when the death was intended. This court has indicated over the years that the trial court should use analytic precision in instructing on self-defense. When a defendant claims that he pointed a gun in self-defense but that the shooting was accidental, CRIMJIG 7.05 clearly does not fit. In any event, since defendant's attorney did not object, defendant should be deemed to have forfeited his right to have the issue considered on appeal.

■ The court's instruction that it is the duty of an attorney to present evidence on behalf of his client was also not objected to. We disposed of an identical issue in *State v. Schmieg*, 322 N.W.2d 759, 760 (Minn.1982), as follows:

Defense counsel did not object to an instruction that the prosecutor and defense counsel have a duty to present evidence on behalf of their clients, and our examination of the instructions as a whole satisfies us that the instructions did not give the jury the impression that defendant has any duty to present evidence. However, as in *State v. Lloyd*, 310 N.W.2d 463, 465 (Minn.1981), we again cautioned against the use in in-

structions of any language which might lead a jury to think that the defendant has any obligation to present evidence. *See State v. Brouillette*, 286 N.W.2d 702 (Minn.1979); *Brouillette v. Wood*, 636 F.2d 215 (8th Cir.1980) (Petition for Federal habeas corpus denied).

The instruction on the testimony of an unimpeached witness stated:

While it is your duty to accept as true the uncontradicted testimony of an unimpeached witness given with apparent frankness and candor, still you are not obligated to accept it as true merely because there is no direct testimony contradicting it. If it contains contradictions or improbabilities which, standing alone, in connection with other evidence in the case, furnish a reasonable ground for believing it not true, you may disregard it.

■ Defendant argues that this instruction was particularly bad because the only type of impeachment instruction given pertained to impeachment by prior convictions. However, the court's instructions as a whole made it clear that factors other than prior convictions could be considered in evaluating a witness' credibility. Further, defense counsel did not object.

Affirmed.