**STATE of Minnesota, Respondent,**

**v.**

**William T. SCHEUBLE, Appellant.**

**No. C2-85-2187.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

Review Denied Sept. 24, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Anne McDiarmid, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This appeal is from a judgment of conviction for second-degree felony murder. Appellant challenges the failure to submit lesser-included offenses, and the sufficiency of the evidence. We affirm.

## FACTS

Robert Clark died the night of October 20–21, 1984, as a result of injuries suffered when he was kicked and beaten by appellant. Appellant does not dispute the fact he fought with Clark, nor that death resulted from his blows, but claims he acted in self-defense and in defense of another, Claude Stiehl, after Clark pulled a knife on Stiehl.

Clark, Stiehl and appellant had been drinking continuously for approximately a week at Clark's house in northeast Minneapolis. All three men had alcohol problems. Stiehl, the only eyewitness, is a diabetic who blacks out frequently when drinking and could not recall many facts concerning the incident.

On October 20, 1984, the three men had been drinking whiskey and beer much of the day in Clark's kitchen. One of the three called Stiehl's mother for money to buy insulin for him. Stiehl and appellant

met her downtown and bought a fifth, which they drank downtown. When they returned, Clark became angry because they brought no liquor back with them and the following day was Sunday. Appellant testified that the next thing he knew Clark had a knife against Stiehl's neck. Stiehl could not remember the argument, or going downtown to meet his mother, but did remember Clark holding a knife against the jugular vein in his neck.

There was considerable testimony that Clark was a violent man when drunk, and had pulled knives on others, including his ex-wife and appellant himself. There were a number of knives in the kitchen.

When Clark had removed the knife from Stiehl's neck, appellant told him, "Don't ever do that to the old man again." Clark then went to the bathroom adjacent to the kitchen. Appellant testified that Clark still had the knife with him when he entered the bathroom. Stiehl did not remember whether Clark still had the knife.

When Clark came out of the bathroom, appellant met him, knocked him down and began kicking him. Appellant claims that Clark was coming after him with the knife.

Appellant continued kicking Clark, who was on the floor in the entryway of the bathroom. Stiehl testified variously that the beating lasted "a couple of minutes," and "two to 15" minutes. Stiehl pulled appellant away from Clark after two unsuccessful attempts; he stated appellant "was like a crazy man and kept jerking loose and going back and hitting some more."

Stiehl and appellant then left the house, and proceeded downtown where they were arrested for disorderly conduct. Appellant stated he had taken the knife from Clark and flung it in a nearby parking lot. Clark's body was discovered by his former stepson at approximately 2 a.m. on October 21. Clark had moved himself into the bedroom where he was found lying alongside the bed.

The medical examiner testified Clark had been dead for from two to six or eight hours. Clark's blood alcohol content was .20 percent. The examiner testified Clark could have survived his injuries for 45 minutes up to 6 hours after the beating.

The autopsy showed Clark had extensive bruises and lacerations to his face, neck, shoulders and chest, as well as groin area. There was internal hemorraghing, four fractured ribs and a broken bone in the neck. The pathologist testified Clark had been struck at least 10 times with considerable force. The cause of death was respiratory depression, or a breathing difficulty related to the traumatic injuries.

Appellant was charged with second-degree felony murder for causing the death, without intent, in the course of committing, or attempting, first-degree or third-degree assault, Minn.Stat. §§ 609.221, .223. Minn. Stat. § 609.19(2). The trial court declined appellant's requests to instruct the jury on first-degree manslaughter—both "misdemeanor" manslaughter, Minn.Stat. § 609.-20(2) and "heat-of-passion" manslaughter, Minn.Stat. § 609.20(1)—and second-degree "culpable negligence" manslaughter. Minn.Stat. § 609.205(1). Appellant was convicted of second-degree murder.

## ISSUES

1. Did the trial court err in failing to submit to the jury first-degree or second-degree manslaughter?

2. Was the evidence sufficient to prove appellant was not acting in self-defense?

## ANALYSIS

*1. Failure to submit lesser offenses*

Appellant contends the trial court erred in failing to submit the manslaughter offenses as lesser-included offenses. As the supreme court reiterated in *State v. Edwards,* 343 N.W.2d 269, 274 (Minn.1984):

The general rule is that a trial court has to submit a lesser offense only if it is a so-called lesser-included offense and only if there is evidence that produces a rational basis for a verdict acquitting the defendant of the offense charged and

convicting him of the lesser offense. (cite omitted)

The State argues that "heat-of-passion" manslaughter and "culpable negligence" manslaughter are not lesser-included offenses when felony-murder is charged, and that a "rational basis" is lacking for a conviction of either offense. The State has not briefed the "misdemeanor" manslaughter issue, but argued at trial that submitting this offense is not appropriate where the underlying felony is a crime against the person. *See State v. Adams,* 295 N.W.2d 527, 533 (Minn.1980); *see also, State v. Nunn,* 297 N.W.2d 752, 754 (Minn.1980).

In order to convict for felony-murder, the jury must find that the defendant

[c]ause[d] the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense * * * *.

Minn.Stat. § 609.19(2) (1984). The State contended appellant, while not intending Clark's death, was committing a felony offense, first- or third-degree assault, thereby causing his death.

Manslaughter in the first-degree is defined as follows:

Whoever * * * *intentionally causes the death* of another person in the heat of passion provided by such words or acts of another as would provoke a person of ordinary self-control under like circumstances * * * [is guilty of manslaughter in the first degree].

Minn.Stat. § 609.20(1) (emphasis added).

Manslaughter in the second-degree is defined as follows:

Whoever causes the death of another * * *by his culpable negligence* whereby he creates an unreasonable risk, and consciously takes chances of causing death or great bodily harm to another * * * [is guilty of manslaughter in the second degree].

Minn.Stat. § 609.205 (emphasis added).

Three distinct, separate, and mutually exclusive states of mind are reflected in the statutes governing these three crimes. After focus has been put on the evidence

presented as to appellant's state of mind, it is clear that the trial court did not err by refusing to submit instructions as to either of the two lesser offenses.

### a. Manslaughter in the first-degree

■ The trial court's refusal to submit instructions on heat of passion manslaughter has been considered by the Minnesota Supreme Court recently in the following seven cases: *Bellcourt v. State,* 390 N.W.2d 269 (Minn.1986); *State v. Edwards,* 343 N.W.2d 269 (Minn.1984); *State v. Nurmi,* 336 N.W.2d 65 (Minn.1983); *State v. Hoffman,* 328 N.W.2d 709 (Minn.1982); *State v. Lee,* 282 N.W.2d 896 (Minn.1979); *State v. Swain,* 269 N.W.2d 707 (Minn. 1978); and *State v. Leinweber,* 203 Minn. 414, 228 N.W.2d 120 (1975). Refusal to submit lesser instructions was upheld in all cases except *Leinweber.* In these cases, the refusal was upheld either because the court did not find sufficient evidence that the act was committed in the heat of passion or the evidence of provocation was not sufficient to reduce the defendant's culpability. In each case except *Nurmi* and *Bellcourt,* the charged offense was *intentional* murder.

If appellant's version of the facts are accepted, it can be argued that he acted in the heat of passion with provocation so as to distinguish the present case from *Edwards, Nurmi, Hoffman, Swain,* and *Lee.* However, the critical element distinguishing felony murder from heat of passion manslaughter is the degree of intent.

In order to have the intent to kill required to convict a defendant of manslaughter in the first-degree (heat-of-passion), the "defendant must have acted with the purpose of causing death or he must have believed that his act would have that result." CRIMJIG 11.09. Thus, although first-degree manslaughter is a lesser-included offense of felony murder in the second degree, *State v. Galvan,* 374 N.W.2d 269, 271 (Minn.1985), the trial court reasonably rejected appellant's request since there was no evidence that would have justified the conclusion that appellant

intended to kill Bob Clark. *See State v. Lohmeier,* 390 N.W.2d 882 (Minn.Ct.App. 1986).

### b. *Manslaughter in the second-degree (culpable negligence)*

 The instruction is not applicable because there is no evidence indicating any carelessness or negligence. *See State v. Werman,* 388 N.W.2d 748 (Minn.Ct.App. 1986) (no error to refuse instruction on second-degree manslaughter where defendant was not negligent). Either appellant assaulted Clark intentionally and in self-defense or he did not. Implicit in any act of self-defense is the admission of the intentional use of force.

### 2. *Sufficiency of the evidence*

Upon reviewing the record, we believe the evidence was sufficient to sustain the conviction.

### DECISION

Affirmed.