STATE of Minnesota, Respondent,

v.

Mitchel TUOMI, Appellant.

No. CO–86–562.

Court of Appeals of Minnesota.

Dec. 2, 1986.

Review Denied Jan. 21, 1987.

Hubert H. Humphrey, III, Atty. Gen., Rebecca H. Hamblin, Spec. Asst. Atty. Gen., St. Paul, Michael Milligan, Earl Maus, Cass Co. Atty., Walker, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, Deborah Ellis, Thomson & Hawkins, St. Paul, for appellant.

Heard, considered, and decided by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

Appellant Mitchel Tuomi was convicted of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(e)(i) (1984), for sexually assaulting a young woman. On appeal he claims improper admission of statements in violation of *Miranda*, insufficient evidence, improper instructions, erroneous evidentiary rulings, and ineffective counsel. He also contends the trial court should not have imposed the presumptive guidelines sentence. We affirm.

## FACTS

In the summer of 1985, 22–year-old J.P. was working at Madden's Resort, near Brainerd, Minnesota. She worked as the golf driving range attendant out of a small hut located about one mile from Madden's Lodge. About 7:45 p.m. on August 23, she was closing the register and counting the day's receipts. She saw a man run by the window. The man, wearing blue bikini shorts, yellow shirt, gloves, black mask, and barefoot, appeared· at the door to the hut.

J.P. thought a friend was playing a joke and tried to lift the mask off. The masked man pulled the mask back down. Thinking she was being robbed, J.P. told the man to take the money. J.P. testified the man

then said, "I don't want the money. I'm going to f___ you."

J.P. claimed she grabbed a walkie-talkie and began screaming for help as the man grabbed her arms and started to force her to the floor. A struggle ensued. J.P. claimed the man repeatedly threatened to f___ her. The man's gloves were off because, according to J.P., he had difficulty in untying her belt with the gloves on. J.P. testified that he had his hand over her mouth. She claimed that he pulled her pants and underwear down to her knees and put his finger in her vagina.

The man got off J.P. as Randy Lee, manager of Madden's Inn, had arrived in response to J.P.'s summons for help on the walkie-talkie. Lee observed J.P. on the floor with the masked man on top of her. The man then fled out of the hut. Lee gave chase. Meanwhile, another employee of Madden's, T.J. McGuire, arrived at the hut. He saw J.P. hysterical and screaming. He noticed her belt buckle was undone and that her pants were unsnapped. He also gave chase.

As the masked man ran alongside County Road 77 down the driving range, Lee tried to get help from a passing motorist. The masked man heard Lee tell the motorist that the masked man had tried to rape a girl and he turned and yelled "bullshit." The masked man then ran into the woods, followed by McGuire. He removed his mask and yelled to McGuire that it was a joke and a mistake. During the chase, he knocked McGuire down. The man eventually reached his black Mazda pickup truck which was parked near the airstrip next to the driving range. A chase ensued; by this time the police had arrived.

Brainerd Police Officer Randy Fisher talked with J.P. who told him that a man had attempted to rape her and put his finger in her vagina. Lee and McGuire returned and described the man, his vehicle, and where he was heading. Fisher left in pursuit and radioed to the Crow Wing County Sheriff's Department to watch for the truck. Minnesota State Trooper Eugene Abraham spotted the ve-

hicle speeding and followed it. Meanwhile, Baxter Police Officer James Fredstrom heard that Trooper Abraham was chasing a black Mazda pickup on Highway 210. Fredstrom stopped the vehicle.

The man, identified as Mitchel Tuomi, asked Fredstrom the reason for the stop and Fredstrom said to talk to Trooper Abraham who had just arrived on the scene. Trooper Abraham asked Tuomi where he was coming from and Tuomi said from Brainerd. Meanwhile, Fisher arrived and asked Tuomi where he was coming from and Tuomi again replied Brainerd. In response to further questioning from Fisher, Tuomi indicated that no one other than he had been wearing his clothes or driving his truck. (These latter statements were suppressed at trial.) Tuomi was placed under arrest and read his *Miranda* rights.

Tuomi waived his rights and said that he had come from some friends but hadn't stopped there, and that he had been in Brainerd. As Tuomi was being transported to jail, he asked Deputy Sheriff Neal Gaalswyk what he was arrested for and Gaalswyk replied criminal sexual conduct. Tuomi said, "This is the craziest goddamn thing I have ever done." Tuomi had two minor abrasions on his face and a bruise on the arm; Gaalswyk photographed Tuomi's facial injuries.

Deputy Fisher returned to Madden's and took statements from J.P. and other Madden's employees. He took possession of the mask and gloves which were allegedly worn by Tuomi.

Fisher did not note any signs of injury on J.P. and decided not to take photographs of her. He also did not photograph the inside of the hut and did not seize J.P.'s clothing or dust for fingerprints. J.P. did not wish to receive medical treatment and Fisher did not request that J.P. submit to a sexual assault exam because he thought it was unnecessary since no intercourse had occurred. However, expert testimony at trial indicated that an examination would have aided in determining the severity of any trauma, whether any foreign material from the assailant's finger had been deposited on

her body, whether there were any bruises on her thighs or buttocks, or any possible fingerprint injuries from being grabbed. Fisher had not instructed J.P. not to shower and she showered while he was pursuing Tuomi.

At trial J.P.'s mother testified that when J.P. arrived home that night she was hysterical. She also testified that J.P.'s mouth was puffed and swollen and that J.P. had bruises on her face, shoulder, arms, legs, thighs and back.

Tuomi, age 27 at trial, testified that he was training to become a member of the United States Olympic Cross Country Ski Team and that he regularly worked out by running, roller skiing, swimming and hill bounding (running with ski poles) in the Madden's area. He claimed he wore a ski mask to protect his face from deer flies and gloves to protect his hands from the ski poles' wrist straps. He ran barefoot to toughen the soles of his feet.

Tuomi claimed he had just finished a seven- to eight-mile run and had dropped his ski poles at the end of his course and ran toward his truck. He passed the driving range hut and the attendant said "Hi," and he decided to stop and chat. Tuomi testified he had met J.P. a few weeks earlier in the whirlpool at Madden's. He stood in the doorway and J.P. told him to take the money. According to Tuomi, he jokingly said, "Okay, sure," and then J.P. suddenly hit him with the walkie-talkie. Tuomi claimed that J.P. was hysterical and they began wrestling. He asked her, "what the f___" she was doing several times as he attempted to calm her down. He claimed that when Lee arrived, he panicked and ran. He denied threatening to sexually assault J.P. or penetrating her with his finger. Tuomi claimed that following his arrest, upon being informed by Gaalswyk, he said, "This is the craziest goddamn thing I have ever *heard*," not *"done."*

## ISSUES

1. Did the trial court err in refusing to suppress some of appellant's pre-*Miranda* and post-*Miranda* statements?

2. Was the evidence sufficient to sustain appellant's conviction for criminal sexual conduct in the first degree?

3. Did the trial court err in refusing to instruct on lesser offenses?

4. Did the trial court's evidentiary rulings deny appellant a fair trial?

5. Was appellant denied effective assistance of counsel?

6. Did the trial court abuse its discretion in imposing the presumptive guidelines sentence?

## ANALYSIS

### I.

1. Appellant contends that all of his pre-*Miranda* statements to officers Fredstrom and Abraham should have been suppressed. The trial court suppressed appellant's pre-*Miranda* statements to Deputy Fisher.

■ Trooper Abraham asked appellant about his excessive speed and also asked appellant where he was coming from. He testified at the omnibus hearing that he asked the latter question to verify that he had stopped the correct vehicle. Neither officer knew the reason for which appellant was being sought. A *Miranda* warning is required if statements are obtained during custodial interrogation. We do not believe the trial court erred in ruling that appellant was not in "custody" at the time of these roadside questions. *State v. Herem,* 384 N.W.2d 880, 883 (Minn.1986); *see Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

■ 2. After appellant was arrested by Deputy Fisher, he was read his *Miranda* rights. Appellant told Fisher about stopping at a friend's residence. Appellant requested a lawyer. When Fisher asked to search the Mazda, all questioning ended. On his way to jail, Deputy Gaalswyk testified that appellant said, "This is the craziest goddamn thing I have ever done." This statement was a spontaneous, volunteered remark and clearly admissible. *Rhode Is-*

*land v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *State v. Jackson,* 351 N.W.2d 352, 356 (Minn.1984).

Appellant nevertheless claims that it was the fruit of earlier fifth amendment violations (appellant's statements to Deputy Fisher which were suppressed). In *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the United States Supreme Court held that the fifth amendment does not require the suppression of statements made after proper *Miranda* warnings and a valid waiver, solely because the police had earlier obtained a voluntary but unwarned statement. Appellant claims that under the Minnesota Constitution this court should recognize a fruit of the poisonous tree doctrine as applied to fifth amendment cases. However, in *State v. Murphy,* 380 N.W.2d 766 (Minn.1986), the Minnesota Supreme Court noted that the Minnesota self-incrimination clause is identical to the fifth amendment to the United States Constitution; therefore, the United States Supreme Court interpretation of the federal provision is of "inherently persuasive, although not compelling, force." *Id.* at 771. There is no reason to adopt a contrary view to that expressed by the United States Supreme Court. In this case, there was no showing of any coercion when appellant volunteered the statement that it was the craziest thing he had ever done. The statements were knowingly and voluntarily made and were therefore properly admitted at trial.

## II.

Appellant claims the evidence was insufficient to sustain his conviction. Appellant personally reasserted this claim in a pro se supplemental brief which we carefully reviewed. On review, we must determine whether a jury could reasonably conclude that the defendant was guilty of the offense charged, given the facts in the record and legitimate inferences which can be drawn from the facts. *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978); *see State v. Daniels,* 332 N.W.2d 172, 180 (Minn. 1983). In examining the record, we must

assume the jury believed the evidence supporting the conviction and disbelieved the contrary evidence. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980). Resolution of conflicting testimony is the exclusive function of the jury because it has the opportunity to observe the demeanor of witnesses and weigh their credibility. *State v. Lloyd,* 345 N.W.2d 240, 245 (Minn. 1984) (citing *Pieschke,* 295 N.W.2d at 584).

■ This case is a classic case involving conflicting testimony—the complainant alleged appellant inserted a finger in her vagina and appellant denied committing any sexual offense. While the police investigation in this case left much to be desired, we think the jury was entitled to believe J.P.'s version of the events. J.P. made early and continuous cries for assistance during her struggle with appellant. She made a prompt complaint, was highly emotional and upset, and lacked a motive to fabricate her story. Her version of the events was consistent. We will not disturb the jury's verdict.

## III.

Appellant was charged with first- and third-degree criminal sexual conduct. Both of these crimes allege the element of sexual penetration. At the close of the evidence, defense counsel requested instructions on criminal sexual conduct in the second and fourth degrees, and of attempted criminal sexual conduct in the first, second, third and fourth degrees. Criminal sexual conduct in the second and fourth degrees involves the element of sexual *contact* rather than penetration. The trial court denied the requested instructions.

The State acknowledges that the requested instructions are lesser offenses, but argues the trial court was not required to submit them. In *Bellcourt v. State,* 390 N.W.2d 269 (Minn.1986), the supreme court stated:

> The test used in determining whether to submit a lesser-included offense to a jury is whether the evidence provides a rational basis for an acquittal on the offense charged and a conviction on the lesser

offense. *State v. Leinweber,* 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975). Thus, "proof of the elements which differentiate the two crimes must be sufficiently in dispute so that a jury" may make this distinction. *State v. Adams,* 295 N.W.2d 527, 532 (Minn.1980). If a trial court were to submit a lesser offense simply because "[a] jury has the power to acquit irrationally in the teeth of overwhelming evidence of guilt," *State v. Patch,* 329 N.W.2d 833, 836 (Minn.1983), it runs the risk that the verdict will be based on sympathy for the defendant rather than on the evidence. *See State v. Dolliver,* 154 Minn. 297, 303, 191 N.W. 594, 596 (1923).

The determination of what, if any, lesser offense to submit to the jury lies within the sound discretion of the trial court, *LaMere v. State,* 278 N.W.2d 552, 558 (Minn.1979); *Leinweber,* 303 Minn. at 421, 228 N.W.2d at 125; but where the evidence warrants an instruction, the trial court must give it. *See State v. Lee,* 282 N.W.2d 896, 900 (Minn.1979). The failure to give an appropriate instruction on lesser offenses is a ground for reversal only if defendant is prejudiced thereby. *See State v. Edwards,* 343 N.W.2d 269, 276 (Minn.1984).

*Id.* at 273.

■ Here, appellant denied touching J.P. with any criminal sexual intent. His defense was that J.P., for no apparent reason, attacked him and he began struggling with her. He claims she fabricated the story about sexual penetration. Under appellant's version of the facts, he lacked any intent to penetrate or touch J.P. He denied committing or attempting to commit any crime, including sexual contact. The trial court heard all the evidence and in its discretion determined that the jury had to find either that appellant had penetrated J.P. or had committed no crime. *See Loftus v. State,* 357 N.W.2d 419, 422–23 (Minn.Ct. App.1984), *pet. for rev. denied* (Minn. Mar. 6, 1985).

■ Appellant argues that J.P.'s allusions to appellant's unwanted touches or her testimony that she told Deputy Fisher appellant had tried to rape her arguably supports a verdict of attempted criminal sexual conduct. In light of appellant's statements to J.P. that he was going to f___ her, her statement to Fisher was obviously an indication that she believed she was about to become a victim of forced sexual intercourse. The trial court did not abuse its discretion in refusing appellant's requested instructions on the lesser offenses.

IV.

Appellant personally challenges several evidentiary rulings. We find no error in any of the rulings allowing the admission of appellant's blue bikini shorts, the testimony of J.P.'s mother regarding J.P.'s emotional condition following her reported assault, and the flight evidence that appellant had left the State while the case was pending. We cannot review appellant's claim that his private investigator was precluded from testifying as a defense witness because there is no record that the witness was in fact precluded from testifying. Finally, J.P.'s statements to Deputy Fisher were admissible as corroborative evidence of the victim's testimony under *State v. Hesse,* 281 N.W.2d 491, 492 (Minn.1979).

V.

Appellant personally claims he received ineffective assistance of counsel. While a direct appeal is not the most appropriate method of raising this issue, we will consider the claim. We have reviewed the record and must reject appellant's contentions. The items appellant challenges fall within the realm of legitimate tactical decisions of counsel and do not demonstrate that appellant's representation was not reasonably effective. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

VI.

The trial court did not abuse its discretion in imposing the presumptive sentence

under the sentencing guidelines. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981).

## DECISION

Appellant's conviction for criminal sexual conduct in the first degree is affirmed.

Affirmed.

RANDALL, Judge, dissenting.

I respectfully dissent. I believe the trial court committed reversible error by failing to submit to the jury the requested lesser included charges of criminal sexual conduct in the second and fourth degree and lesser included charges of attempted criminal conduct in the first and third degree.

I dissent with some reluctance as I conclude from reviewing the record that appellant was given a fair trial, and that the evidence presented is sufficient to sustain the jury verdict. However, I am left with an inescapable conclusion that the requested lesser includeds were justified by the facts and should have gone to the jury. Respondent State of Minnesota concedes that the requested instructions on second and fourth degree criminal sexual conduct and attempted criminal sexual conduct in the first and third degree are lesser included offenses under Minn.Stat. § 609.04 (1984), and agrees that these offenses which appellant requested satisfy the first part of the controlling two-part test on the question of lesser includeds. Under the two-part test, (1) it must be determined whether the lesser offense is necessarily included in the greater offense, as outlined in Minn.Stat. § 609.04; and (2) it must be determined whether the evidence adduced is sufficient to permit the jury rationally to acquit the defendant of the charged offense and convict him of the included offense. *State v. Patch,* 329 N.W.2d 833, 836 (Minn.1983).

Respondent argues that the second part of the test is not met because appellant totally denies touching the victim with any kind of criminal sexual intent. The majority opinion appears to accept respondent's argument that *Loftus v. State,* 357 N.W.2d 419 (Minn.Ct.App.1984), controls, and that

*Loftus* stands for the proposition that if there is a complete denial of culpability, lesser includeds can not be submitted.

I do not find that *Loftus* stands for this proposition. In *Loftus,* the defendant argued that the trial court erred by refusing the instructions on a lesser included offense of criminal sexual conduct in the second degree. This court affirmed the refusal to submit that lesser included and held:

> Loftus' theory of the case was that no contact at all occurred on July 14, 1983; his defense was a complete denial of the charged offense.

That defense stance put Loftus at odds with *People v. Geiger,* 35 Cal.3d 510, 674 P.2d 1303, 199 Cal.Rptr. 45 (1984), wherein the California Supreme Court stated:

> [T]he instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability as when the defense is alibi, or the only issue is identity, *unless the defendant argues the evidence at most shows guilt only of the related offense.*

*Id.* at 531–32, 674 P.2d at 1316, 199 Cal. Rptr. at 58 (footnote omitted). Loftus was not entitled to a lesser included offense instructions because there was no dispute over the elements differentiating the two crimes.

*Id.* 357 N.W.2d at 422–3 (emphasis added).

A careful examination of this holding and the facts shows that the holding was predicated on Loftus' complete denial of any physical contact *and there being "no dispute"* over the elements which differentiate criminal sexual conduct in the first degree from criminal sexual conduct in the second degree.

That is not the case with appellant here, and I find support in that portion of the *Geiger* case which states the instruction need not be given:

[u]nless the defendant argues the evidence at most shows guilt only of the related offense.

*Geiger* at 531–2, 674 P.2d at 1316, 199 Cal.Rptr. at 58.

Accepting the facts set out in the majority opinion, both appellant and J.P. agree that at one point appellant was laying on top of J.P. on the floor and struggling with her. J.P. testified that appellant's intent and actions were sexual, and appellant's testimony was that his intent and actions were to calm her down. But everyone agrees that he was on top of her, and that this much was seen by an independent witness, Randy Lee.

Thus, it is clear that this much evidence supports submitting to the jury criminal sexual conduct in the second degree, criminal sexual conduct in the fourth degree, and attempted criminal sexual conduct in the first and third degrees. The testimony as to penetration was based only on the testimony of the victim. Appellant vigorously denied any penetration and there was a complete lack of corroborating evidence on this point. It is true, of course, that for a jury to find penetration, there need be no corroborating evidence. Minn.Stat. § 609.-347, subd. 1 (1985). However, the complete lack of corroborating evidence, while not proof that there was no penetration, is certainly not proof that there was.

The inadequate follow-up investigation by the officers and the complete lack of supporting medical testimony are matters that a conscientious jury could take into account in coming to the conclusion that, while they did not accept appellant's story that the physical contact was not sexually oriented, they could not find that the evidence on penetration came up to that high degree of proof beyond a reasonable doubt. As the majority opinion points out, J.P. did not wish any medical treatment, and the officers did not press on her any need to have it done. The investigating officer did not instruct her not to shower or clean herself until a full investigation had been completed. J.P. did, in fact, shower and clean herself, thus lessening her chance for

either the State or the appellant to get evidence favorable to their position. A conscientious jury could easily have found the lesser includeds, not requiring actual penetration, to have been proven by proof beyond a reasonable doubt, but not the greater charges which necessitated penetration.

While one witness testified that J.P.'s belt buckle was undone and that her pants were unsnapped as she rose from the floor, that witness made no claim that he observed actual penetration. The State concedes that there is no direct testimony of any penetration except that of the victim.

As in *Geiger*, appellant argues that the evidence at best, if it shows guilt, is guilt only of sexual conduct, not penetration. On the other hand, obviously the State is entitled to argue that criminal sexual conduct in the first and third degree should go to the jury based on the victim's testimony. With no dispute by either side that the physical evidence presented to the jury could support a finding of guilt of the lesser includeds, but a genuine dispute as to whether or not the evidence presented would justify finding of criminal sexual conduct in the first and third degree, I would hold that a careful reading of the cases relied upon by the majority, namely, *Bellcourt v. State*, 390 N.W.2d 269 (Minn. 1986) and *State v. Lienweber*, 303 Minn. 414, 228 N.W.2d 120 (Minn.1975), require the submission of the requested lesser included offense, and that failure to do so was reversible error.

I would reverse and remand for a new trial with instructions to the court that, should the record at the second trial support the submission of lesser included offenses, using the two-part test of *Patch*, the defendant is not precluded from requesting a "lesser included" simply because he denied sexual intent as the basis for his physical contact with the victim. To hold otherwise would have a chilling effect on a defendant's right to take the stand and deny all guilt, while at the same time claiming the benefit of any lesser includeds which the law and the facts justify.

The majority opinion comes close to holding that, before a defendant is entitled to an instruction on a lesser included offense, the defendant must come forward and admit some involvement with the main charge and argue that, while he has done something wrong, some essential element of the crime charged is missing, and thus, the lesser included is deserved.

It is decidedly not the law that some tacit admission of guilt or involvement with the victim is required before lesser includeds can be given. Obviously this defendant and his attorney accept the risk of appearing inconsistent to a jury as they argue, on the one hand, that nothing was done but, on the other hand, that if something was done it was a lesser evil than the main charge.

That is a risk defendants have to accept and are entitled to accept. If the facts, as here, show that despite defendant's denial of any criminal intent, there is a rational basis for a conviction on the offense of criminal sexual contact, the defendant can argue for the submission of those lesser includeds to the jury while denying both sexual contact and penetration.

The element which separates criminal sexual contact in the second and fourth degree from criminal sexual penetration in the first and third degree is "penetration" and that element was "* * * sufficiently in dispute." *See State v. Adams*, 295 N.W.2d 527, 532.

I would reverse and remand for a new trial.