STATE of Minnesota, Respondent,

v.

Floyd H. SCHWAB, Appellant.

No. C9–87–5.

Court of Appeals of Minnesota.

July 28, 1987.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Cathryn Y. Middlebrook, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by NIERENGARTEN, P.J., FOLEY and RANDALL, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

A jury convicted appellant Floyd H. Schwab of one count of criminal sexual conduct in the second degree, in violation of Minn.Stat. § 609.343, subds. 1(a) and 2 (Supp.1985). We affirm.[1]

## FACTS

In January 1986, Schwab moved into the home of his girlfriend, Beverly Olson. Olson lived there with her two sons, K.O., age 17 and L.O., age five. Schwab occasionally babysat L.O.

On February 14, 1986, Olson's sister, Paula Mooney, was babysitting L.O. so Olson and Schwab could go out to dinner. While L.O. was playing with his cousins, A.M., age 10, and R.M., age seven, he told them that he and Schwab had played the "pee-pee rub" game. A.M. yelled for her mother to come and listen to what L.O. was saying. Mooney testified that she questioned L.O. as follows:

I asked him, I said, did—"Was Floyd giving you a bath and just rubbed it?" And he said, "No." And I said, "Well, what happened then?" He said, "He just pulled my pants down and rubbed my pee-pee."

Mooney immediately called her sister and told her what L.O. had said.

After receiving her sister's phone call, Olson did not confront Schwab. She went out for dinner with him as planned and later they slept together. L.O. stayed overnight with Mooney. The next day, Olson questioned L.O. about the "pee-pee rub" game. Olson then confronted Schwab and told him to move out of her house. She also contacted the Hennepin County Child Protection Department.

On April 1, 1986, Lieutenant Dennis Weiss of the Minneapolis Police Department's Family Violence Unit contacted Schwab, told him that he was a suspect in the L.O. case and requested that he come in to discuss it. At Weiss' office, Schwab was advised of his rights and told that he would not be arrested on that date. During the conversation with Weiss, Schwab said, "Well, it did happen, but I didn't pee on [L.O.]." Schwab was arrested on April 15, 1986.

At the omnibus hearing, Schwab moved to suppress the statements he made to Weiss. The trial court denied the motion and ruled that if Schwab testified, his statements to Weiss and his 1985 conviction for second-degree intrafamilial sexual abuse would be admissible for impeachment purposes.

At trial, the court found that five-year-old L.O. was competent to testify. During L.O.'s testimony, he made several remarks that he did not want Schwab to see him and that Schwab was staring at him. When L.O. was asked about how to play the "pee-pee rub" game he played with Schwab, L.O. testified: "You know, your pee-pee, you rub it, he pulled down his pants, he pulled down my pants and rub it

---

1. Recently, this court considered Schwab's sentencing appeal following a probation revocation hearing and held that the trial court did not abuse its discretion in sentencing Schwab to consecutive terms after revoking a stay of imposition. *See State v. Schwab,* 404 N.W.2d 284 (Minn.Ct.App.1987).

together." L.O. also demonstrated the game with anatomically correct male dolls. L.O. identified the dolls as Schwab ,and himself, undressed the dolls and rubbed their genital areas together. Finally, L.O. testified that Schwab told him not to tell anyone about the "pee-pee rub" game. Olson testified that when she confronted Schwab, he hung his head, kind of started to cry and said he could not help himself.

Schwab did not testify at trial. Instead, Schwab presented two witnesses. Curt Bazoff, Schwab's brother, testified that Schwab moved out of Olson's house the last week in January 1986 and lived next door to him. Becky Bungert, Schwab's new girlfriend, testified that she spent time with Schwab every day since the third week in January 1986, that Schwab was living with Roscoe Benson next door to Curt Bazoff at the end of January 1986, and that Schwab was with her on February 14, 1986.

On rebuttal, the State called Etta Tyson, Olson's neighbor. Tyson testified that Schwab was living with Olson until February 15 or 16, 1986. The jury found Schwab guilty of criminal sexual conduct in the second degree.

### ISSUES

1. Did the trial court err by ruling that Schwab's prior felony conviction for second-degree intrafamilial sexual abuse could be used for impeachment purposes if he testified?

2. Was the evidence sufficient to sustain Schwab's conviction?

3. Did Schwab receive effective assistance of counsel?

### ANALYSIS

1. At the omnibus hearing, the trial court ruled that if Schwab testified, his 1985 felony conviction for second-degree intrafamilial sexual abuse would be admissible for impeachment purposes. Schwab argues that the trial court's ruling unnecessarily chilled his right to testify on his own behalf.

Admissibility of prior convictions for impeachment purposes is governed by Minn. R.Evid. 609, which provides in part:

(a) **General rule.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect * * *.

■ It is well established that it is within the trial court's discretion to determine whether the probative value of the conviction outweighs its prejudicial effect. *State v. Amos,* 347 N.W.2d 498, 502 (Minn.1984). The trial court's decision will not be overturned absent a clear abuse of discretion. *Id.*

■ The Minnesota Supreme Court requires the trial court to consider five factors when determining whether to admit evidence of a prior conviction for impeachment purposes: (1) the impeachment value of the prior crime; (2) the date of the conviction and defendant's subsequent history; (3) the similarity of the prior conviction with the present crime; (4) the importance of defendant's testimony; and (5) the importance of the credibility issue. *State v. Jones,* 271 N.W.2d 534, 537–38 (Minn. 1978).

*The impeachment value of the prior crime.*

Schwab's prior conviction has legitimate impeachment value because it would "allow the jury to see 'the whole person' and therefore permit the jury to better judge the truth of the defendant's statements." *State v. Ford,* 381 N.W.2d 30, 32–33 (Minn. Ct.App.1986), *pet. for rev. denied,* (Minn. March 27, 1986).

*The date of the conviction and defendant's subsequent history.*

Schwab's conviction was only one year old.

*Similarity of the prior conviction with the present crime.*

Schwab argues that his prior conviction should not have been admissible for impeachment purposes because the prior conviction was for substantially the same conduct for which he is now on trial and because the inevitable tendency is for jurors to believe " 'if he did it before he probably did so this time.' " *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). It is Schwab's position that if his prior conviction for second-degree intrafamilial sexual abuse would have been admitted, he would have been portrayed to the jury as a chronic sexual abuser and the actual issues before the jury would have been irredeemably clouded. We disagree.

The Minnesota Supreme Court, in *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979), has held that prior convictions involving criminal sexual activity are admissible in a trial where the defendant is charged with a similar offense. In *Brouillette*, the defendant was charged with fourth-degree criminal sexual conduct. The supreme court affirmed the trial court's ruling that if the defendant chose to testify, his prior convictions for third-degree criminal sexual conduct would be admissible for impeachment purposes. *Id.* at 707–08. *See also State v. Bettin*, 295 N.W.2d 542, 546 (Minn. 1980) (where defendant was charged with third-degree criminal sexual conduct, his prior aggravated rape conviction was admissible for impeachment purposes). *See State v. Crocker*, 409 N.W.2d 840 (Minn. 1987). Here, we find no abuse of discretion.

*The importance of defendant's testimony.*

Schwab's version of the case was presented to the jury through his own witnesses. Schwab "made no offer of proof to show what, if anything, more he would testify about that was not already before the jury." *State v. Lloyd*, 345 N.W.2d 240, 246 (Minn.1984).

*Importance of the credibility issue.*

Had Schwab testified, the jury would have had to choose between the credibility of L.O.'s testimony and Schwab's testimony.

[I]f the issue for the jury narrows to a choice between defendant's credibility and that of one other person—then a greater case can be made for admitting the impeachment evidence, because the need for the evidence is greater.

*Bettin*, 295 N.W.2d at 546.

Based on the foregoing *Jones* analysis, we find that the trial court did not abuse its discretion by ruling that evidence of Schwab's prior conviction would be admissible for impeachment purposes if he testified.

■■■ 2. Appellate court review of claims of insufficiency of the evidence is very limited. We must view the evidence most favorably to the state and assume the jury believed the state's witnesses and disbelieved any contradictory evidence. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978).

Schwab argues that the State has failed to prove beyond a reasonable doubt that he is guilty of second-degree criminal sexual conduct. L.O. testified that Schwab pulled down his pants and L.O.'s pants and rubbed his penis against L.O.'s penis. L.O.'s testimony alone is sufficient to support Schwab's conviction. A sexual assault complainant's testimony need not be corroborated. Minn.Stat. § 609.347, subd. 1 (1984). *See also State v. Beard*, 380 N.W.2d 537, 541 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Mar. 3, 1986) (sexual assault complainant's testimony taken as a whole was consistent and credible). "[I]t is the exclusive function of the jury to weigh the credibility of witnesses." *State v. Blair*, 402 N.W.2d 154, 158 (Minn.Ct. App.1987). The jury is entitled to believe the victim's account of the events. *State v. Trotter*, 354 N.W.2d 539, 541 (Minn.Ct.App. 1984), *pet. for rev. denied*, (Minn. Dec. 20, 1984).

Our review of the record reveals that the jury could have reasonably believed L.O.'s

account of the events and found Schwab guilty. Therefore, Schwab's claim of insufficiency of the evidence is without merit.

3. Schwab personally asserts ineffective assistance of counsel. Schwab contends that his attorney did not have a full understanding of the facts of his case because his attorney failed to have Benson (the man he was allegedly living with at the time of the offense) testify for the defense, failed to cross-examine Olson as to her feelings about Schwab's relationship with his new girlfriend Bungert and failed to make a motion in limine to restrict Olson's testimony.

In *State v. Cermak*, 350 N.W.2d 328 (Minn.1984), the Minnesota Supreme Court stated "an appeal from a conviction is not the most appropriate way to raise issues of trial counsel's ineffective representation." *Id.* at 332 n. 5. The issue of ineffective assistance of counsel should be addressed in a post-conviction proceeding. *State v. Wenberg*, 357 N.W.2d 355, 356 (Minn.Ct. App.1984), *pet. for rev. denied*, (Minn. Feb. 6, 1985).

Schwab argues that a post-conviction proceeding is not a condition precedent for appellate court review because the only purpose it would serve is to deny him an expeditious review of his claim. In *State v. Tuomi*, 396 N.W.2d 847, 852 (Minn.Ct.App. 1986), *pet. for rev. denied*, (Minn. Jan. 21, 1987), we held that while a direct appeal is not the most appropriate method for raising the issue of ineffective assistance of counsel, we would consider the claim.

To reverse a conviction based on ineffective assistance of counsel, Schwab must show that counsel's performance was deficient as measured by an objective standard of reasonableness under prevailing professional norms and that the deficient performance prejudiced the defense. *Marshall v. State*, 395 N.W.2d 362, 367 (Minn. Ct.App.1986), *pet. for rev. denied*, (Minn.

Dec. 17, 1986) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We find that the record does not support Schwab's claim of ineffective assistance of counsel.

## DECISION

Affirmed.

RANDALL, Judge, concurring specially.

I concur in the result. However, I do wish to address the first issue, namely: did the trial court err by admitting for impeachment evidence appellant's prior felony conviction for a crime of sexual abuse when he was on trial on a charge of criminal sexual conduct?

The majority properly listed the five factors set out by the supreme court for a trial court to consider on the question of whether to admit evidence of a prior conviction for impeachment purposes. *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978). The majority properly cited the general evidentiary rule, Minn.R.Evid. 609(a).[1]

My concern is the erosion of factor three from *Jones*, the similarity of the prior conviction with the present crime. *Id.* This was specifically designated by the majority in *Jones* as a factor against admission:

[T]he greater the similarity, the greater the reason for not permitting use of the prior crime to impeach.

*Id.*

The rationale behind using factor three as a limitation or a bar to impeachment by a prior conviction is set out in cases relied on by Minnesota courts.

Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that "if he did it before he probably did so this

---

1. Minn.R.Evid. 609(a) states:

For the purpose of attacking credibility, evidence he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (1) was punishable by death or imprisonment in excess of one

year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

time." As a general guide, those convictions which are for the same crime should be admitted sparingly * * *.

*Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968).

As a possible compromise on this issue, the *Gordon* court went on to state:

[O]ne solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity.[2]

*Id.*

*Gordon* states:

Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A "rule of thumb" thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not * * *.

The cautionary language of *Gordon* and *Jones* reappeared in *State v. Bettin,* 295 N.W.2d 542, 546 (Minn.1980) (Otis, J. Rogosheske, J., Wahl, J., dissenting):

One factor weighing against admission of the prior conviction was the fact that prior crime was basically the same crime with which defendant was charged. *See State v. Leecy,* 294 N.W.2d 280, filed May 16, 1980 (holding that admission of 8-year-old aggravated assault conviction to impeach a defendant charged with aggravated assault was error, although harmless). The danger when the past crime is similar to the charged crime is that the likelihood is increased that the jury will use the evidence substantively

rather than merely for impeachment purposes.

The three judges dissenting in *State v. Bettin* found that the effect of allowing into evidence a prior rape conviction in a trial for criminal sexual conduct was prejudicial far beyond being probative, and would have kept out impeachment by that prior conviction altogether. The dissent in *Bettin* quoted another part of *Gordon* which focuses on the essence of the problem. I suggest that this quote from *Gordon* underscores the paramount importance of factor three in *Jones:*

In *Gordon v. United States,* 383 F.2d 936, 940–41 & n. 11 (D.C.Cir.1967), the federal court speaking through Judge Burger, now the Chief Justice, cautioned against the use of prior records which have no direct bearing on honesty and veracity, such as acts of violence which do not involve deceit, fraud, cheating, or larceny. "A special and even more difficult problem arises" the court noted "when the prior conviction is for the same or substantially the same conduct for which the accused is on trial." This is because of what the court describes as "the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'"

*Bettin,* 295 N.W.2d at 547.

To get around this difficult fairness question articulated by *Gordon, State v. Brouillette,* 286 N.W.2d 702 (Minn.1979), points out the applicable special instruction which is given to a jury when impeachment evidence has been admitted. The instruction "directs" a jury to consider the prior conviction *only* as it relates to defendant's credibility.

In deciding the believability and weight to be given the testimony of a witness, you may consider:

---

2. The biggest problem and the greatest danger of chilling a defendant's option of taking the stand and presenting his/her version of the facts, is not a question of staleness, but a question of what crime in their past will come out. When the past conviction is for a particularly reprehensible crime such as murder, rape, or any kind of sexual abuse, the defendant is loath

to exercise the constitutional right to take the stand. These crimes have nothing to do with a witness's ability to recall facts or tell the truth. However, they do carry the acute and present danger that juries will receive them as substantive evidence of guilt of the crime for which the defendant stands charged.

Evidence that the witness has been convicted of a crime. In doing so, you may consider whether the kind of crime committed indicates the likelihood of his telling or not telling the truth. (*In the case of defendant, you must be especially careful to consider any previous conviction only as it may affect his credibility; you must not consider any previous conviction as evidence of guilt of the offense for which he is on trial here.*)

10 *Minnesota Practice*, CRIM.JIG, 3.15(1) (1985) (emphasis added).

Problem: Is it reasonable and fair to assume that a jury will understand there is supposed to be a subtle difference between the questions "Is a defendant guilty?" and, "Is the defendant lying when he says he is not guilty?" My perception and the perception, I believe, shared by the trial bench, prosecutors and defense attorneys who work in the area of criminal trials, is different. In reality, the evidence that the defendant has committed the same crime in the past is so prejudicial (read: substantive and credible) that the jury is apt to believe that he has also committed this one.

I submit that a proper reading of *Gordon* and *Jones* requires a holding that factor three in *Jones* has more weight than any of the other four, and, in a close case, is determinative on the side of suppression.

Jurors are not drawn from the ranks of legal article writers, and are not sent to school or tutored before trial in how to differentiate what are essentially subtle shades of the same color. Jurors are common sense, average citizens trying to do their best. If they are judging someone who is on trial for murder, rape or burglary and they find out that in the past ten years [3] the defendant has previously committed murder, rape or burglary, they are going to weigh that conviction as, at least, some *substantive* evidence of guilt. In a close case, it will likely be determinative of guilt.

In layman's terms, and laymen are the people juries are composed of, the essence of CRIM. JIG 3.15 is as follows. The judge tells the jury:

Look, the defendant here is on trial for the charge of burglary. There is evidence in this trial, which you are entitled to consider, about the defendant's prior conviction for burglary. You are not supposed to use his previous conviction for burglary as evidence of guilt of this charge of burglary. You are entitled to use the evidence that he has been convicted of burglary in determining whether or not he is lying when he says he did not commit this one.

It is neither reasonable nor fair to expect a jury to understand what is supposed to be a discernible difference between evidence of guilt, which is forbidden, and evidence that "You are lying when you say you are not guilty," which is allowed. To argue the difference is discernible is sophistry. If there is a difference, it could exist only in some turgid tome put out by the law review for the University of Mars. It is not fair to expect of a juror that level of high mindedness which we ourselves do not possess. When I review a case involving a conviction for a crime of which the defendant has previously been convicted, either a few or several times in the past, it "crosses my mind" that those past convictions for the same crime support a jury's finding of guilt. The mental distinction that they only go to the defendant's credibility, and not his guilt, can escape me.

---

**3.** Depending on the circumstances, the impeachment crime may go back even farther than ten years. Minn.R.Evid. 609(b) sets out the factors to be considered when the defense of staleness is raised:

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

I suggest that the average, rational juror concludes that the question of guilt and the question of, "Are you lying when you say you didn't do it?" amount to the same thing.

The committee comments to Minn.R. Evid. 609 point out the archaic and disgraceful origins of impeachment by prior conviction. At one point in time, by judicial fiat, courts decreed that their version of a fair trial would be a trial in which the accused, if a convicted felon, could not even take the stand in his/her defense. Today that same prohibition against testifying is accomplished, not literally, but for all practical purposes, by the present impeachment rule. Any defendant, even one with a sound and arguable theory of defense, will be deterred and often will not take the stand if he/she has past felony convictions for the same or similar offenses. If the prior offenses are particularly heinous, the defendant and his attorney may come to the honest conclusion that the constitutional option of taking the stand[4] is all but foreclosed.

Although this opinion and this concurrence revolve around a criminal case, the same extreme danger is present in a civil case. Any plaintiff with a perfectly presentable claim for damages, and any civil defendant with a perfectly presentable defense to someone else's claim for damages, will have their case substantially weakened, devastated or irrevocably prejudiced by revealing to the jury that he/she, within the past ten years, has committed murder or a sexual assault. The admission of that evidence to the jury, even though the crime is for an unrelated incident, will severely cloud the jury's perception about that person's personal and moral worthiness to be entitled to a verdict. To argue otherwise ignores reality.

If courts are going to show substantial concern for the inherent dangers of impeachment by past conviction, which are set out in the committee comments and mentioned routinely in federal and state cases, although not always followed, the most direct, workable and fair rule would be to limit impeachment by prior conviction to that one single crime, perjury.

As a possible compromise to limiting use of impeachment evidence of a prior conviction to perjury, courts might allow specifically itemized crimes of the kind that, it can be argued, go directly to truthfulness. In that category could be included forgery and certain types of theft, such as embezzlement or swindle. Even burglary is suspect, as entering a building without permission with the intent to punch someone in the nose may be a burglary, but likely does not relate to one's ability to tell the truth.

The routine admission of impeachment by crimes of the same or similar nature is the present state of the law. *See Brouillette, Bettin,* and *State v. Heidelberger,* 353 N.W.2d 582, 589 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984). Except for *Jones* itself, which resulted in a reversal and a new trial, with four justices dissenting, factor three in *Jones* is honored in its breach and rarely in observance.

Juries are entitled to simple, honest instructions which they can understand and believe. The limiting or cautionary instruction of CRIM. JIG 3.15, although given with the best of intentions, does not fulfill that purpose. It is not fair or honest, or

---

4. This discussion does not directly involve so-called *Spreigl* evidence. *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965). *Spreigl* evidence can be offered by the State for such substantive purposes as showing mode of operation, or identity, whether the defendant takes the stand or not. *Id.; see State v. Billstrom,* 276 Minn. 174, 149 N.W.2d 281 (1967). Impeachment evidence by past conviction can only be introduced if the defendant takes the stand, and then, supposedly, only on the question of credibility, not guilt. *Spriegl,* 272 Minn. at 490, 139 N.W.2d at 169. *Spreigl* evidence suffers from similar flaws as impeachment evidence and, in a sense, borders on being out of control. There are no statutory or rigid rule requirements as to staleness. *Spreigl* evidence can consist of any so-called "bad acts" in a defendant's life. At least with a crime, a defendant cannot be impeached if he/she has not been convicted of one. *Spreigl* bad acts can consist of actions or words, not only those that were never charged out as crimes, where defendant, at least, had a chance to interpose a defense in a court of law, but can also consist of matters which may not even come under any of our statutory definitions of crimes. *Id.*

even normal, to expect a jury to put completely out of their minds as evidence of guilt of an alleged crime their knowledge that the defendant has committed that same crime in the past.

When all is said and done, the law has to be bottomed on honesty. Anything less by the judiciary is a disservice to the bar and litigants, those we serve.