STATE of Minnesota, Respondent,

v.

John Rodney CHRISTOPHERSON,
Appellant.

No. C8–92–1452.

Court of Appeals of Minnesota.

May 18, 1993.

nal sexual conduct in violation of Minn. Stat. § 609.343, subd. 1(a) (1990) (sexual contact with person under age 13 by person more than 36 months older than victim). He received a 21–month executed prison sentence. Claiming insufficiency of the evidence and errors in the admission of evidence, Christopherson appeals from the conviction. He also appeals from the sentence on the ground that the trial court abused its discretion in departing dispositionally from the guidelines sentence. We affirm in part, reverse in part, and remand for resentencing.

Deborah Ellis, Kate Latimer, Thomson & Ellis, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., and Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and HUSPENI and PETERSON, JJ.

## OPINION

PETERSON, Judge.

John Rodney Christopherson was convicted of one count of second degree crimi-

### FACTS

In early May 1991, V.G. and her four-year-old daughter, D.G., visited appellant John Rodney Christopherson and his wife at their home. V.G. and Christopherson's wife were in the living room watching a movie, and Christopherson was in the kitchen watching television. D.G. was going back and forth between the kitchen and the living room.

V.G. testified that D.G. came out of the kitchen and went underneath the dining room table. At about the same time, Christopherson came out of the kitchen and began approaching V.G. According to V.G., as Christopherson walked toward her, D.G. started yelling, "Don't listen to him, mom, don't listen to him." Christopherson told V.G. that they needed to talk about D.G. because "she's very aggressive, just tried to stick her tongue down my mouth."

V.G. testified that the next morning, D.G. asked, "Mom if I told you what John did to me would you be mad at me?" D.G. said John Christopherson had almost choked her by putting his tongue down her throat and then he put his hand in her pants and grabbed her butt.

The weekend of May 18, 1991, D.G. stayed overnight with Rosalie Wescott and her adult daughter, Amy Wescott. At trial, Amy Wescott testified that D.G. said she was angry at a day-care teacher for grabbing her arm when she got in trouble. D.G. said it felt like someone was choking

her, "like when John put his tongue in my mouth and he kissed me."

When Amy Wescott asked if John had touched D.G. anywhere else, D.G. replied, "Well, on my bottom." Using a doll, Amy Wescott told D.G. to show her where John had touched her. D.G. pointed to the doll's behind. Amy Wescott pointed to the doll's genital area and asked if John had touched D.G. there. D.G. said, "No, he didn't touch me there."

During about the same time period, D.G. displayed anger while at her day-care center. Pat Wagstrom, a day-care provider, testified that when she asked D.G. what she was angry about, D.G. replied, "I'm really angry, he tried to kiss me and it made me really mad, it made me really angry." Wagstrom testified that D.G. told Wagstrom the name of the person who had tried to kiss D.G., but Wagstrom did not recall the name at trial.

On May 20, 1991, V.G. contacted the police. Sergeant Thomas Fabio referred D.G. to the Midwest Children's Resource Center. Dr. Carolyn Levitt, a physician and director of the Midwest Children's Resource Center, interviewed D.G. D.G. told Levitt that John kissed her the wrong way. She explained that he put his tongue in her mouth really far. D.G. also told Levitt that John put his hand on her back under her shorts and touched her butt. When Levitt asked if D.G. felt like she was going to vomit or choke when John kissed her, D.G. said John did not choke her. A videotape of Levitt's interview with D.G. was played at trial.

After the interview, Levitt conducted a physical examination of D.G. At trial, Levitt testified that she touched D.G.'s hymen, clitoris, and anal opening. D.G. said she had not been touched in any of those places. Levitt testified that when she asked D.G. where she had been touched, D.G. "rolled over on her side and ran her hand down her back in between the two sides of the buttocks, down toward the coccyx."

Kristen Conrad, a day-care provider for D.G., testified about an incident that happened in October 1991. After a police offi-

cer had given a presentation about strangers, D.G. told Conrad how someone had kissed her the wrong way and tried to do something bad to her. D.G. later identified the person to Conrad as "John."

On about December 29, 1991, Rosalie Wescott and D.G. visited the St. Paul Cathedral. They talked about the Cathedral being the church where Christopherson and his wife got married. Rosalie Wescott testified that D.G. said Christopherson looked very nice but was not a nice person inside because "he did naughty things to me."

D.G. testified at trial. She stated that Christopherson kissed her the wrong way with his tongue in her mouth and that he touched her on her bottom inside her clothes. She recalled the incident taking place in the kitchen, and she said the touch on her bottom was bad.

John Christopherson denied ever kissing D.G. on the mouth or touching her bottom. He claimed he and his wife were at his wife's parents' home the evening V.G. recalled having dinner at the Christophersons'. Christopherson stated he suspected D.G. had been sexually abused by someone else.

A jury found Christopherson guilty of second degree criminal sexual conduct. Before sentencing, Christopherson was evaluated by a psychologist and a probation officer. A report prepared by the psychologist noted that Christopherson maintained a blanket denial of having sexually assaulted D.G. but did not conclude the level of denial was so great that Christopherson could not succeed in treatment. The psychologist recommended probation conditioned on Christopherson attending outpatient treatment in a group dealing with people in denial and admitting to his offense within a certain period of time. The probation officer agreed with the psychologist's recommendation.

The presumptive sentence for Christopherson's offense was 21 months stayed. The trial court sentenced Christopherson to 21 months executed.

## ISSUES

I. Did the trial court err in departing dispositionally from the guidelines sentence?

II. Did the trial court err by admitting D.G.'s out-of-court statements into evidence?

III. Is the evidence sufficient to sustain Christopherson's conviction for second degree criminal sexual conduct?

## ANALYSIS

### I.

■■■■ The trial court may depart from the sentencing guidelines when substantial and compelling circumstances are present. Minn.Sent.Guidelines II.D. The decision to depart rests within the trial court's discretion and will not be reversed absent a clear abuse of that discretion. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981).

■■■■ In sentencing Christopherson, the trial court listed unamenability to treatment and dangerousness to the community as factors supporting the departure. Unamenability to probation and dangerousness to the community are proper factors to consider in determining whether to depart dispositionally. *State v. Carpenter,* 459 N.W.2d 121, 128 (Minn.1990). However, the trial court's conclusion that Christopherson was unamenable to treatment is contrary to the recommendations of the psychologist and the probation officer and is unsupported by any evidence in the record. The determination appears to be based solely on the trial court's subjective assessment of Christopherson's level of denial.

Although the trial court is not bound to follow sentencing recommendations, we found no authority to support the position that a decision to depart may be based solely on the trial court's subjective determination that a defendant is unamenable to treatment. *Cf. Carpenter,* 459 N.W.2d at 128 (probation officer and psychologist recommended executed sentence); *State v. Hagen,* 317 N.W.2d 701, 702–03 (Minn. 1982) (defendant had history of deviant sexual conduct involving children and was di-

agnosed as poor candidate for treatment); *State v. Park,* 305 N.W.2d 775, 776 (Minn. 1981) (probation officer recommended against probation and defendant had prior history of treatment failure; *State v. Chase,* 343 N.W.2d 695, 698 (Minn.App. 1984) (medical experts determined defendant was unamenable to treatment). Absent any evidence on the record supporting the trial court's determination that Christopherson was unamenable to treatment, we hold the trial court abused its discretion in departing dispositionally from the presumptive sentence.

The trial court also listed Christopherson's dangerousness to the community as a reason for departure. However, because the trial court's finding on this factor was also based on its determination that Christopherson was unamenable to treatment, it is not a sufficient basis to support a departure.

### II.

■■■■ Rulings on evidentiary matters generally rest within the sound discretion of the trial court. *State v. Brown,* 455 N.W.2d 65, 69 (Minn.App.1990), *pet. for rev. denied* (Minn. July 6, 1990). Even if the trial court erred in making an evidentiary ruling, we will not reverse unless the error substantially influenced the jury to convict. *Id.*

The trial court admitted D.G.'s out-of-court statements pursuant to Minn.Stat. § 595.02, subd. 3 (1990), which provides for the admission of certain out-of-court statements made by children under age ten who are sexual assault victims. However, we do not consider the issue of the statements' admissibility under the statute because the statements were admissible under the rules of evidence. *See* Minn.Stat. § 595.02, subd. 3 (provides for admission of statements not otherwise admissible by statute or rules of evidence); *State v. Edwards,* 485 N.W.2d 911, 915 (Minn.1992) (no need to rely on statute if statements admissible under rules of evidence).

■ Hearsay statements are generally inadmissible. Minn.R.Evid. 802. However, a statement is not hearsay if:

> The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness.

Minn.R.Evid. 801(d)(1)(B). An out-of-court statement is not hearsay if the statement is consistent with the declarant's trial testimony and is helpful to the factfinder in evaluating the credibility of the declarant as a witness. Minn.R.Evid. 801, 1989 committee cmt.

■ Several witnesses testified at trial about D.G.'s out-of-court statements and a videotape recording of D.G.'s interview with Levitt, who also testified at trial, was allowed into evidence. The evidence was consistent with D.G.'s testimony at trial and helpful to the jury in evaluating her credibility. The form of evidence was also proper. *See State v. Daniels,* 380 N.W.2d 777, 783 (Minn.1986) (witnesses other than declarants allowed to testify at trial about declarants' prior statements under excited utterance exception to hearsay rule); *State v. Sullivan,* 360 N.W.2d 418, 422 (Minn. App.1985) (videotape interview admissible to rebut charge of recent fabrication under former version of Minn.R.Evid. 801(d)(1)(B)) *pet. for rev. denied,* (Minn. Apr. 12, 1985).

The trial court properly admitted D.G.'s out-of-court statements as substantive evidence. No limiting instruction was necessary. *See* Minn.R.Evid. 801, 1989 committee cmt. (when prior consistent statements are not hearsay under current version of Minn.R.Evid. 801(d)(1)(B), instruction informing jury that statement cannot be used to prove truth of matter asserted is unnecessary).

### III.

■ When there is a challenge to the sufficiency of the evidence, this court's review is limited to a careful analysis of the record to determine whether the evidence, viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict they reached. *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). A reviewing court must assume the jurors believed the state's witnesses and disbelieved any contrary evidence. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

A person who engages in sexual contact with another person is guilty of second degree criminal sexual conduct if "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." Minn.Stat. § 609.343, subd. 1(a) (1990). Sexual contact includes the intentional touching by the actor of the complainant's intimate parts or clothing covering the intimate parts with sexual or aggressive intent. Minn.Stat. § 609.341, subd. 11(a)(i), (iv) (1990). Intimate parts include "the primary genital area, groin, inner thigh, buttocks, or breast of a human being." Minn.Stat. § 609.341, subd. 5.

D.G. testified that Christopherson touched her buttocks inside her clothes. This evidence shows Christopherson intentionally touched D.G.'s intimate parts. D.G. also testified that Christopherson kissed her by putting his tongue in her mouth. This evidence shows Christopherson acted with sexual intent. Given our standard of review, D.G.'s testimony alone is sufficient to support Christopherson's conviction. *See* Minn.Stat. 609.347, subd. 1 (1990) (sexual assault victim's testimony need not be corroborated); *State v. Schwab,* 409 N.W.2d 876, 877, 879 (Minn. App.1987) (five-year-old's testimony that defendant pulled down his pants and rubbed his penis against victim's penis sufficient to support conviction for second degree criminal sexual conduct). Moreover, there was substantial evidence directly corroborating D.G.'s testimony, including D.G.'s statements to her mother, Amy Wescott, and Levitt.

### DECISION

The trial court properly admitted D.G.'s out-of-court statements as substantive evidence. The evidence is sufficient to sustain Christopherson's conviction. We af-

firm the judgment of conviction. In sentencing Christopherson, the trial court erred by departing dispositionally from the guidelines. We reverse the sentence and remand for resentencing in accordance with the sentencing guidelines.

**Affirmed in part, reversed in part and remanded for resentencing.**